**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

In re:                          )    BAP No. CC-16-1435-KuFL
                                )    BAP No. CC-16-1436-KuFL
MARK TECHNOLOGIES CORPORATION,)      BAP No. CC-17-1069-KuFL
                                )    BAP No. CC-17-1070-KuFL
                 Debtor.        )    (Related)*
_____ )
MARK TECHNOLOGIES CORPORATION,)      Bk. No. 6:16-bk-12192-WJ
                                )
                 Appellant,     )
                                )
v.                              )    M E M O R A N D U M**
                                )
HELEN RYAN FRAZER, Chapter 7    )
Trustee,                        )
                                )
                 Appellee.      )
_____ )
                                )
TENDERLAND RENEWABLES, LLC;     )
ALTA MESA FINANCE, LLC,         )
                                )
                 Appellants,    )
v.                              )
                                )
HELEN RYAN FRAZER, Chapter 7    )
Trustee; INVESTEK PROPERTIES    )
CO.; EARTH CONSTRUCTION AND     )
MINING; EDF RENEWABLE ENERGY, )
INC.; ALTA MESA 640 LLC,        )
                                )
                 Appellees.     )
_____ )

---

 * While not formally consolidated, these four related appeals were submitted at the same time, and were considered together.  This single disposition applies to the four appeals, and the clerk is directed to file a copy of this disposition in each appeal.

 ** This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Argued and Submitted on January 25, 2018

Filed - February 1, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Wayne Johnson, Bankruptcy Judge, Presiding
_____

Appearances:     Robert P. Goe and Donald W. Reid of Goe & Forsythe, LLP on brief for appellants TenderLand Renewables, LLC, Alta Mesa Finance, LLC, and Mark Technologies Corporation; Elissa D. Miller of SulmeyerKupetz, APC argued for appellee, Chapter 7 Trustee, Helen Ryan Frazer; J. Barrett Marum of Sheppard Mullin Richter & Hampton LLP argued for appellee, EDF Renewable Energy, Inc.; Patrick M. Hartnett of Hartnett Law Group on brief for appellee, Earth Construction & Mining, Inc.; Reg J. Lormon of the Law Office of Reg J. Lormon on brief for appellee, Investek Properties Co; Thomas R. Phinney, Esq. of Parkinson Phinney argued for appellee Alta Mesa 640, LLC.
_____

Before:  KURTZ, FARIS, and LAFFERTY, Bankruptcy Judges.

## I. INTRODUCTION

Mark Technologies Corporation (MTC or Debtor) owned real property which was improved with two windfarm projects (Projects).  MTC entered into a lease and a series of agreements with EDF Renewable Energy, Inc. (EDF-RE), Alta Mesa Phase III Partners (AMPP), EDF Renewable Windfarm IV, Inc. (EDF-RW IV), and EDF Renewable Services, Inc. (RDF-RS) (collectively, EDF) under which EDF maintained and operated the Projects.

A dispute over the early termination of a restated and amended five year lease agreement arose between EDF and MTC resulting in a $20 million dollar judgment against MTC.  Due to

EDF's collection efforts, MTC filed a chapter 11[1] petition which was converted to chapter 7. Helen Frazer was appointed the chapter 7 trustee (Trustee).

MTC's schedules listed assets including, among others, 650 acres of real property upon which the Projects were located (Real Property), 159 wind turbine electricity generators (WTGs), and MTC's asserted right to receive about $2.8 million in funds generated by the Projects which were deposited into a business trust account (Trust Funds). MTC's appeal of the EDF judgment (EDF Litigation) was pending at the time MTC filed its petition.

The Real Property was encumbered by three involuntary liens held by appellees, Investek Properties Company (Investek), Earth Construction and Mining (ECM), and EDF (collectively, the Lien Creditors). MTC disputed the three liens, which totaled over $22 million and exceeded the value of the Real Property.

Trustee moved to sell the Real Property and other personal property in conjunction with a settlement agreement with the Lien Creditors whereby they agreed to reduce their liens against the Real Property, settle all disputes with Trustee related to the liens, and assure the estate a portion of the sale proceeds. In addition, EDF agreed to allocate a portion of the Trust Funds to the estate once ownership of the funds was determined in an adversary proceeding pending before the bankruptcy court.

Appellants, affiliates of MTC, TenderLand Renewables, LLC (TR) and Alta Mesa Finance, LLC (AMF) (collectively, the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and Rule references are to the Federal Rules of Bankruptcy Procedure.

-3-

Affiliates), objected to the settlement agreement and asset sale, alleging that TR owned the WTGs and the Trust Funds and AMF owned other personal property connected to the operation of the windfarms pursuant to an assignment agreement. These assertions were contrary to MTC's representations on its schedules and contrary to representations made in the state court litigation with EDF in connection with MTC's request for a preliminary injunction. The Affiliates argued that Trustee could not sell property which the estate did not own nor could the settling parties apportion the Trust Funds when ownership of those funds were disputed. Finally, the Affiliates asserted that Trustee was improperly selling the overencumbered Real Property and related assets for the benefit of the secured creditors and to ensure payment of Trustee's administrative fees in contravention of the holding in In re KVN Corp., Inc., 514 B.R. 1 (9th Cir. BAP 2014).

These contentions, among others, required Trustee to make numerous amendments to the settlement and sale motions and related documents. After several amendments to the settlement agreement and two hearings, the bankruptcy court issued extensive findings of fact and conclusions of law, finding that the legal standards for approving a compromise under Rule 9019 were met (Settlement Order). In the end, the settlement agreement was amended so that ownership rights in the Trust Funds would be determined in the pending adversary proceedings rather than through certain settlement terms.

One day after approving the settlement agreement, the bankruptcy court approved the sale of the Real Property and

-4-

other assets under § 363(f), and found that the buyer was a good faith purchaser under § 363(m) (Sale Order). The Affiliates appeal the Settlement and Sale Orders in BAP Nos. CC-17-1069 and CC-17-1070.

Prior to the entry of the Settlement and Sale Orders, MTC filed motions to compel Trustee to abandon the EDF Litigation and the Real Property, which the bankruptcy court denied. MTC appeals the bankruptcy court's orders denying its motions for abandonment of the EDF Litigation and Real Property in BAP Nos. CC-16-1435 and CC-16-1436.

Following the filing of these appeals, a motions Panel granted the Affiliates a stay pending the appeals of the Settlement and Sale Orders conditioned upon their posting a $5 million bond. The Affiliates failed to post the bond and the Panel dissolved the stay.

Trustee moved to dismiss the appeal of the Sale Order as statutorily moot under § 363(m) and contended that the appeals of the Settlement and Sale Orders were equitably or constitutionally moot. A motions Panel denied the motion, deferring resolution of mootness to the merits Panel.

For the reasons that follow, we DISMISS the appeal of the Sale Order on statutory mootness grounds. Even if the appeal of the Sale Order is not statutorily moot, we conclude that it is equitably moot as is the appeal of the Settlement Order, which makes DISMISSAL of the four appeals appropriate. Finally, even if the Settlement and Sale Orders are not equitably moot, we AFFIRM those orders on the merits. Due to our affirmance, we DISMISS the appeals denying abandonment of the EDF Litigation

-5-

and Real Property on constitutional mootness grounds.

## II. FACTS

**A.   MTC's Operations**

Mark Jones is the president of MTC and the president of TenderLand Power Company, Inc. (TPC), the managing member of TR and the managing member of the current managing member of AMF.

MTC is a passive real estate company with no employees or operations of its own. MTC purchased 650 acres of real property in Riverside County, California, which was improved with the Projects. The project operators sold electrical energy generated by the WTGs to Southern California Edison Company (SCE) under an Amended and Restated Power Purchase Contract (SCE PPA). SCE, in turn, made payments to the Alta Mesa Power Purchase Contract Trust (Trust), which was a business trust created to, among other things, allocate and distribute payments received from SCE to the operators of the Projects that generated the electrical energy. The Trust is governed by the Alta Mesa Power Purchase Contract Trust Agreement and Declaration of Trust dated August 4, 1988 (Trust Agreement).

The electrical energy generated by the Projects is delivered to SCE through common facilities located on or adjacent to the Real Property, including a substation and overhead high-voltage electrical transmission line (Interconnection Facilities). As it is constructed, all electrical energy generated by the Projects is delivered to SCE through the Interconnection Facilities. SCE makes a single monthly payment for the aggregate electrical energy delivered to it from the Projects. This payment is deposited into a bank

account owned by the Trust (Trust Account).

MTC leased the Projects to various operators through long-term capital leases, which governed the underlying Real Property as well as the improvements, including the WTGs located on the property. EDF operated the Projects for many years under various agreements and leases, which were restated from time to time (Restated Project Leases).

Restated Project Leases between MTC and EDF extended the lease terms for six years beginning January 1, 2012 and ending December 31, 2017. Under these agreements, AMPP became the owner and operator of one project and EDF-RW IV became the owner and operator of another. EDF-RE became the operational trustee under the Trust Agreement.

Per agreement, MTC was permitted to terminate one or both of the Restated Project Leases early, but only if MTC proceeded with the construction of a new repower or energy-related project on the Real Property. In turn, the EDF parties, who had prepaid $8 million for the five year extension of the leases, were entitled to a minimum "Preferred Return" on their investment should MTC terminate the leases early.

MTC and its affiliates began to explore repowering a significant portion of the Projects because of potential financing options and attractive governmental incentives. In furtherance of this repower program, TPC and its affiliates formed AMF, which entered into a joint venture with XEMC New Energy Co, LTD, a major state-owned Chinese company that manufactures WTGs and invests in wind power projects. AMF commenced construction on the Real Property in December 2011 and

-7-

continued with significant grading operations during the first half of 2012.

**B.    The Litigation With EDF**

Disputes arose over the early termination of the Restated Project Leases.  In March 2013, EDF gave notice to MTC by letter that, in its view, MTC had terminated the Restated Project Leases as of October 31, 2012.  In May 2013, EDF ceased operating the Projects and froze all future revenues deposited into the Trust Account.  At the same time, EDF filed a complaint against MTC in the California Superior Court, seeking a declaratory judgment that MTC terminated the Restated Project Leases as of October 31, 2012, and an award of damages, rescission, and return of advance rent (State Court Action). EDF alleged that it was owed more than $16 million for the "Preferred Return," and more than $4 million in lost operating income.

Unable to keep the Projects going, MTC shut down the operations in November 2013.  However, shutting down the Projects posed risks of theft and fire, mechanical stress on the equipment, and potential breaches of agreements with SCE and certain land-use permits.  In March 2014, MTC entered into an arrangement with its affiliate, TR, to maintain, repair, and operate the Projects.  TR operated and maintained the Projects from March 2014 to September 2016, allegedly expending over $3 million.  Meanwhile, SCE continued to deposit its monthly payments into the Trust Account.

During this period, MTC sought a preliminary injunction in the State Court Action barring EDF from interfering with MTC's

-8-

use of the Trust Funds. MTC also filed a cross-complaint seeking, among other things, specific performance requiring EDF to execute and deliver documentary assignments of certain assets of the Projects, including the WTGs and Trust, as allegedly required by the terms of the Restated Project Leases due to EDF's abandonment of the Projects in May 2013.

In August 2014, the state court issued a minute order granting MTC a preliminary injunction on the basis that EDF had no colorable claim to funds generated after June 2013 and held in the Trust Account. The state court later issued an order setting forth procedures under which MTC could seek payment for certain expenses from the Trust Funds, but did not compel the turnover of all revenues generated by TR.

In September 2015, a judgment after trial was entered in the State Court Action in favor of EDF and against MTC in the amount of $20,883,646.74. In the judgment, the state court found that MTC terminated the Restated Project Leases on October 31, 2012, when it purportedly gave notice of its right for early termination by commencing construction of its proposed repower project. The state court also found that MTC was not entitled to specific performance, injunctive relief, or monetary damages arising from EDF's abandonment of the Projects on May 31, 2013. Due to the judgment, the preliminary injunction was dissolved. EDF recorded abstracts of judgment, filed a judgment lien on MTC's personal property, and noticed MTC's judgment debtor examination.

However, the litigation continued. MTC unsuccessfully moved for a temporary restraining order regarding the Trust

-9-

Funds.  In November 2015, MTC filed an appeal of the EDF judgment.  The next month, EDF-RE, in its capacity as the operational trustee of the Trust, filed a petition in the state court seeking an order instructing it regarding allocations and distributions from the Trust Account (Probate Proceeding).  In May 2016, EDF removed the Probate Proceeding to the bankruptcy court where it is currently pending.

## C.    Bankruptcy Events

MTC filed a chapter 11 petition on March 11, 2016. Debtor's schedules listed the Real Property and listed personal property, including 159 WTGs.[2]  In the addendum to Schedule B, Debtor also claimed the right to receive the Trust Funds:

> Debtor has the right to receive income generated by Alta Mesa Power Purchase Contract dated August 4, 1988, of over $1,000,000 per year, receivable may exceed $2,000,000.

At the time of the filing, the Real Property was encumbered by three involuntary liens:  (1) a first priority judgment lien held by Investek in the amount of $1,238,379, which was on appeal and disputed; (2) a second priority mechanic's lien held by ECM in the amount of $540,000, which was subject to a pending action in the state court but not yet reduced to judgment; and (3) a third priority judgment lien held by EDF in the amount of $21,007,225.47.  Non-insider general unsecured claims totaled about $2 million.

On May 4, 2016, the case was converted to one under chapter 7 and Trustee was appointed.  Subsequently, Trustee

---

[2] About 80% of these turbines were no longer operational.

-10-

filed an application to employ a real estate broker to market and auction the Real Property along with the WTGs and other improvements. The bankruptcy court granted Trustee's request over the objections of Debtor and the Affiliates. Trustee then filed a motion for approval of the sale procedures and sought a hearing date and briefing schedule on Trustee's motion to confirm the sale to the winning bidder. Trustee intended to sell the Real Property, the WTGs, and other personal property listed on Debtor's schedules to the highest bidder.

EDF filed a reservation of rights in the property which Trustee sought to sell. EDF claimed the right to credit bid in the sale and also asserted that EDF-RW IV and AMPP were the owners of all the personal property making up the windfarm Projects. Due to EDF's claim that it owned the WTGs and other issues raised, the bankruptcy court continued the matter.

At the continued hearing, Trustee represented that she had settlements with the Lien Creditors regarding their disputed liens and that she would be submitting a motion to approve the three compromises. The bankruptcy court approved the sale procedures by order entered on September 22, 2016.

The highest and best bid received by Trustee was $3,180,000 from Mohammed F. Koya, who assigned the rights under the sale agreement to Alta Mesa 640, LLC (Buyer). The sale included the Real Property and the improvements, including the WTGs.[3]

---

[3] Exhibit A to the draft Bill of Sale listed additional assets to be sold which included, among other things, permits or governmental approvals which EDF-RW IV and AMPP obtained with respect to the Projects and which were transferable or assignable

(continued...)

In October 2016, Trustee moved to confirm the sale to the Buyer and sought, among other things, authorization to assume and assign the estate's interest in various agreements necessary for the Buyer to operate a windfarm on the Real Property, i.e.: the SCE PPA; the lease agreement for the Interconnection Facilities; and the Trust Agreement (Sale Motion). Trustee also requested a determination that the Buyer was a good faith purchaser under § 363(m).

In the Sale Motion, Trustee represented that a settlement agreement had been reached with each of the Lien Creditors as to the amount of their allowed claim and for a payment of an amount to the estate from the sale proceeds. However, because the assets were selling for less than anticipated, and the Lien Creditors' liens exceeded the purchase price, the parties were continuing to discuss a revised division of the sale proceeds. As it stood, the Lien Creditors and the estate would receive a percentage of the proceeds from the sale and the EDF parties would receive 80% of the Trust Funds while the estate would receive 20%.

Trustee also argued that the sale was in the best interests of the estate. Besides providing proper notice of the sale to all interested parties, Trustee asserted that the sale was negotiated at arms' length and in good faith. Trustee sought approval of the sale under § 363(f) and contended that the liens against the Property were subject to bona fide disputes.

---

[3](...continued)
to the Buyer under relevant law. In addition, the sale included fences and other improvements.

Finally, Trustee asserted that the sale would afford her funds to pay allowed secured and administrative claims, and a dividend to unsecured claims of the estate.

Mr. Koya submitted a declaration to support confirmation of the sale and a good faith determination. He declared that he had no connections with Debtor or its owners or employees, Trustee or her agents, any creditors of Debtor or other interested party, or the U.S. Trustee. He further declared that he was made aware of the sale through marketing materials sent out by the broker and that the price he agreed to pay for the assets was reached in connection with the auction and as a result of arms-length negotiation with Trustee. The Affiliates did not object to Mr. Koya's declaration or provide any contrary evidence to challenge his statements.

They did, however, oppose the Sale Motion, arguing: (1) Trustee was attempting to sell assets that were not property of the estate; namely, the WTGs and Interconnection Facilities located on the Real Property; (2) Trustee was attempting to sell the Real Property and improvements for the sole benefit of secured creditors; (3) Trustee was attempting to assign agreements to the Buyer that were either terminated or assigned away prepetition or, even if the agreements were property of the estate, they were deemed rejected (as the § 365 deadline of sixty days had passed) and were no longer assignable by Trustee; and (4) the sale was patently unreasonable and proposed in bad faith as Trustee failed to file a motion to approve the compromises with the Lien Creditors, file an adversary proceeding to resolve the disputed ownership in the WTGs and

-13-

Interconnection Facilities, and address the other disputed ownership issues. The Affiliates maintained that until these ownership interests were resolved, Trustee could not sell the assets under the holding in Darby v. Zimmerman (In re Popp), 323 B.R. 260 (9th Cir. BAP 2005).

Attached to the opposition was the declaration of Mr. Jones stating that TR was entitled to monies in the Trust Account and that AMF owned certain personal property by virtue of an assignment from MTC to AMF. Therefore, Mr. Jones asserted that Trustee could not sell that property.

Investek also opposed the Sale Motion. Investek contended that it had a first priority lien on the Real Property and personal property, including the Trust Funds. Investek stated that it would not agree to the sale until a division of the proceeds was fully articulated and everyone agreed to that division.

EDF filed a pleading consenting to the sale and addressing the ownership interests raised by the Affiliates. EDF attached the declaration of Bernard C. Barmann, Jr., counsel for EDF in the litigation against MTC. Mr. Barmann pointed out many instances in which Mr. Jones had testified that MTC, rather than AMF or TR, owned the WTGs and other personal property. According to Mr. Barmann, Mr. Jones' testimony in support of the opposition was in direct conflict with his testimony in the State Court Action, as well as the actions MTC took in that proceeding.

Meanwhile, Debtor filed a motion to compel Trustee to abandon all claims related to the EDF Litigation. Debtor

-14-

asserted that (1) Trustee expressed no interest in prosecuting the appeal of the EDF judgment for the benefit of the estate and (2) due to the state court's errors, it was likely to prevail in the appeal. Debtor maintained that if the appeal were successful, the largest lien against the Real Property would be removed, unlocking substantial equity for the unsecured creditors. Debtor also contended that the resolution of the appeal in its favor would clarify numerous disputes over the ownership of personal property and fixtures located upon the Real Property, which were caused by inconsistencies in the judgment itself. Finally, Debtor stated that its principals would fund the litigation at no expense to the estate. In the end, Debtor argued that abandonment of the litigation claims arising from and relating to the appeal would be in the best interests of the estate.

Trustee opposed the motion to compel abandonment, contending that she had been in discussions with the Lien Creditors regarding the sale of the real and personal property, the assignment of relevant agreements to the Buyer, and the settlement of the Lien Creditors' claims, including the appeal and continued litigation. Trustee reiterated that the parties were continuing their discussions because the bid for the Real Property and other assets was less than anticipated. In short, although the settlement agreement between the parties remained subject to documentation and approval by the bankruptcy court, the Lien Creditors advised Trustee that they consented to the sale free and clear of their respective liens with the liens attaching to the proceeds.

Trustee also contended that Debtor lacked standing to pursue abandonment because there was no possibility of a surplus estate. According to Trustee, Debtor failed to show that the EDF Litigation was burdensome and inconsequential to the estate. Rather, Debtor simply disagreed with Trustee's decision not to pursue the appeal and instead settle with EDF. Trustee emphasized that the appeal of EDF's judgment was one part of the package of rights included in the settlement with EDF. Finally, Trustee pointed out that there was no evidence to support Debtor's conclusion that it would win the appeal of the EDF judgment.

The bankruptcy court heard Debtor's motion for abandonment of the EDF Litigation and Trustee's Sale Motion on October 25, 2016. Regarding Debtor's request for abandonment of the EDF Litigation, EDF argued that the dismissal of the appeal of the state court litigation was an integral part of its settlement with Trustee. EDF made clear that if Debtor were allowed to proceed with the appeal, its settlement with Trustee would fall apart because EDF would have no incentive to do the deal. Furthermore, Trustee and EDF stated that they had exchanged drafts of a settlement agreement, but it was not finalized because Trustee received less than what was expected for the sale of the assets.

The bankruptcy court continued Debtor's motion for abandonment due to the pending settlement as the court perceived there would be a greater chance of settlement if the resolution of the abandonment motion was pending. The court declined to rule on Debtor's standing to bring the motion for abandonment,

-16-

stating that it did not have a complete evidentiary record before it.

The bankruptcy court also continued the Sale Motion, concluding that it would not go forward without a written agreement between the parties regarding the disposition of the sale proceeds. The court further found that Trustee had not established the sale was in the best interests of the creditors without providing the numbers, as the Real Property was overencumbered. The bankruptcy court noted that there had to be something for the administrative creditors and something for the unsecured creditors that was not de minimis. The court also expressed its concern that the Sale Motion was asking the court to expunge instruments that had been recorded against the Real Property without giving notice to the affected parties. Finally, the bankruptcy court asked for a more comprehensive capital gains tax analysis. The court set a briefing schedule for Trustee's supplement to the Sale Motion and motion for court approval of the settlement with the Lien Creditors.

On November 7, 2016, one day prior to Trustee's filing of the settlement motion, the Affiliates filed an adversary complaint seeking a judicial determination of, among other things, ownership of the Interconnection Facilities, Trust Agreement, SCE PPA and Trust Funds. TR alleged that it generated the Trust Funds by operating the Projects from March 1, 2014, until shortly after the bankruptcy case was converted. Therefore, TR was entitled to the funds in the Trust Account attributed to that period. TR maintained that EDF had no interest in the Trust Funds following its abandonment of the

Projects and adjudged termination of the Restated Project Leases.

The Affiliates amended the adversary complaint in January 2017 to alter the relief requested and dropped AMF as a plaintiff. In the amended complaint, TR sought declaratory relief with respect to ownership of the Trust Funds and also sought an accounting for all Trust Funds deposited in the Trust Account on or after March 1, 2014. Ownership disputes over the other assets were deleted. TR voluntarily dismissed this adversary proceeding without prejudice in August 2017, months after the bankruptcy court's entry of the Settlement and Sale Orders.

In conformance with the briefing schedule set by the bankruptcy court, Trustee filed the supplement to the Sale Motion and her motion for approval of the settlement agreement with the Lien Creditors (Settlement Motion). The supplement to the Sale Motion showed that under the settlement agreement each of the Lien Creditors discounted its lien claim and agreed that the estate would receive a portion of the sale proceeds. The settlement with EDF also resolved issues regarding the ownership of the personal property, including the WTGs and the Trust Funds, and provided that Trustee would dismiss the pending appeal of the state court judgment.

Trustee showed that there were approximately $2 million in non-insider unsecured claims and estimated that the estate would receive $930,000 from the sale of the assets and the settlement with the Lien Creditors. In the end, after various payments, there would be approximately $16,000 left for payment on the

non-insider unsecured claims. However, to insure a distribution to creditors, Trustee and her counsel, SulmeyerKupetz (SK), agreed to set aside up to an additional $50,000 from fees otherwise payable to each of them for a total of approximately $66,000 available for distribution to creditors.

Trustee's Settlement Motion essentially reiterated these facts. Trustee asserted that the settlement was fair and equitable under the criteria set forth in Fireman's Fund Insurance Co. v. Woodson (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988) (citing Martin v. Kane (In re A & C Properties), 784 F.2d 1377 (9th Cir. 1986)).

The Affiliates objected to the Sale Motion, arguing that the sale of the overencumbered Real Property was not in the best interests of the estate under the holding in In re KVN Corporation. According to the Affiliates, the sale would result in a loss of $68,650 to the estate because the estate was receiving a carve-out of only $50,000, while Trustee's statutory fee from the transaction was $118,650. They again reiterated that Trustee was attempting to sell assets the estate did not own.

While Trustee's sale and settlement motions were pending, Debtor filed a motion to compel Trustee to abandon the Real Property. According to Debtor, it was doubtful that Trustee would reach a global settlement agreement with the Lien Creditors that could be approved under applicable law or provide a meaningful distribution to the bankruptcy estate.

On November 29, 2016, the bankruptcy court heard Debtor's motion to compel abandonment of the Real Property, the continued

-19-

motion for abandonment of the EDF Litigation, Trustee's Settlement Motion, and the continued Sale Motion. The court first heard argument on the motion to compel abandonment of the EDF Litigation. Counsel for Debtor argued, among other things, that the only chance the creditors would get anything in this case was if the appeal of the EDF judgment proceeded. Without further discussion, the bankruptcy court denied the motion.

Next, the bankruptcy court considered the motion to abandon the Real Property. Debtor's counsel argued that the Real Property was overencumbered and thus the sale could not go forward. Counsel also argued that the property was of inconsequential value to the estate because the sale of the property did not bring any money into the estate. Without further discussion, the bankruptcy court denied the motion.

The court then considered the Settlement Motion and Sale Motion. During this phase of the hearing, the bankruptcy court heard argument from TR's counsel and EDF's counsel regarding the disputes over ownership of the Trust Funds. The court expressed its concern over how the settlement agreement between Trustee and the Lien Creditors would resolve the Probate Proceeding and TR's then pending adversary proceeding, both of which involved disputes over ownership of the Trust Funds. The bankruptcy court was not convinced that there was enough evidence to show that EDF was entitled to any portion of the Trust Funds.

In addition, the bankruptcy court found that there were insufficient proceeds under the settlement agreement for the estate. The court opined that Trustee needed another $150,000 to $200,000 in order to make the settlement/sale work

-20-

economically.[4]

The bankruptcy court then discussed the Affiliates' adversary proceeding related to the ownership disputes of personal property and the Trust Funds. The court pointed out numerous problems with the evidentiary support for their asserted rights of ownership in the personal property and Trust Funds.

On December 1, 2016, the bankruptcy court entered the orders denying Debtor's motions to compel abandonment of the EDF Litigation and Real Property. Debtor filed a timely appeal from both orders on December 14, 2016.[5]

Meanwhile, Trustee filed supplemental pleadings in support of the Settlement Motion. The settlement agreement, as amended, increased cash to the estate from the sale proceeds from $50,000 to $200,000. In addition, the parties agreed that upon entry of a final order approving the settlement, the Probate Proceeding, which was removed to the bankruptcy court, would be dismissed with prejudice.

The Affiliates continued to object to both the settlement

---

[4] The bankruptcy court also decided to strike TR's opposition brief to the Settlement Motion because it was sanctionable. The court explained to TR's counsel that it did not want to read any more stories in briefs without a declaration by someone with percipient knowledge that could state the story. That was lacking in the opposition brief. The court gave TR's counsel an opportunity to file another opposition brief.

[5] The Panel requested Appellant-Debtor to explain how the abandonment orders on appeal were final and immediately reviewable. After receiving the briefs, the Panel issued an order granting Appellant-Debtor leave to appeal the orders denying abandonment to the extent necessary.

-21-

and sale based on ownership issues and contended that the sale was not in the best interests of the estate. In addition, Debtor filed a motion to reconvert the bankruptcy case to a chapter 11 case. This motion was later withdrawn without prejudice.

After several more rounds of pleadings from the parties, the bankruptcy court issued a tentative ruling in advance of the February 23, 2017 hearing on Trustee's Settlement Motion. There, the court stated that it was prepared to enter an order approving the settlement agreement, as amended, in part. The bankruptcy court found that it did not have the power to approve a settlement agreement which terminated the ownership claims asserted by Mr. Jones or the Affiliates in the Trust Funds. Therefore, the court would approve the settlement agreement, as amended, with additional language that essentially stated that the settlement would not impair the ownership claims, title rights, or similar rights asserted by Mr. Jones or the Affiliates to the funds in the Trust Account prior to the petition date, March 11, 2016. The bankruptcy court also stated that the entry of the order approving the settlement should not in any way be construed as validating such claims. Instead, the claims would be adjudicated separately.

The court further required that the recitals in the agreement would not be binding on the parties to the agreement or anyone else. Moreover, the bankruptcy court struck the provision that the Probate Proceeding would be dismissed with prejudice and required the parties to litigate the ownership claims in the Trust Funds and obtain a binding judgment. The

-22-

court also required Trustee to retain her strong arm powers under § 544 and any other avoidance claims necessary to defeat the claims of Mr. Jones, or his Affiliates, regarding entitlement to the Trust Funds or any other assets.

Finally, the bankruptcy court required a provision whereby Trustee and her professionals would agree to reduce their compensation in amounts necessary to insure that at least $250,000 in funds were available for payment of unsecured creditors after paying all chapter 7 administrative costs. The court stated the amount of $250,000 would be reduced to $125,000 in the unlikely event the Trustee and the estate did not receive 20% of the funds in the Trust Account after litigating the ownership disputes. In the end, the court's tentative ruling stated that if Trustee and the parties to the settlement agreed to the amendments stated in the tentative ruling, Trustee could upload an order.

On February 23, 2017, the bankruptcy court held the hearing on Trustee's Settlement Motion. After hearing arguments from the parties, and confirming that Trustee and the Lien Creditors agreed with the amendments suggested in the tentative ruling, the bankruptcy court approved the settlement and rendered its findings of fact and conclusions of law on the record. The court recited the evidence in the record which supported the settlements with each of the Lien Creditors under the four A&C factors: (a) probability of success in the litigation, (b) the difficulties, if any, to be encountered in the matter of collection, (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.

-23-

and (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises.

As to the first and third factors, the bankruptcy court was satisfied that Trustee had throughly investigated the disputed liens on the Real Property and concluded that Mr. Jones provided insufficient evidence to contradict her conclusions with respect to each of the Lien Creditors. Concerning the appeal of EDF's judgment, the bankruptcy court set forth eleven factors which supported Trustee's settlement with EDF which included, among other things, a finding that Mr. Jones was not credible as he started to lie after the case was converted with respect to ownership of property that he had listed on MTC's schedules as belonging to MTC. The bankruptcy court found that since conversion of the bankruptcy case, Mr. Jones had been on a "scorched-earth campaign to pull assets out of the bankruptcy estate and into his own affiliate, TR, for the benefit of Mr. Jones." And, in order to do this, Mr. Jones had to perjure himself. The court further noted that Mr. Jones had provided no evidence that there was any more money at the end of the rainbow — he provided no evidence that the Real Property and the WTGs were worth more than $3.18 million.

The bankruptcy court also found that the difficulties, if any, to be encountered in the manner of collection did not apply to the case. Finally, the court found that the fourth factor, the paramount interests of the creditors, and a proper deference to their reasonable views in the premises, weighed in favor of granting the settlement with each of the Lien Creditors.

Continuing on, the court found that Trustee had diligently

-24-

done her job to ensure that $125,000 at a minimum would be available for creditors other than chapter 7 administrative claims. According to the court, the standards in In re KVN Corporation were met when $125,000 was guaranteed to the estate even if Trustee did not prevail in defeating the claims of TR to the Trust Funds in the pending adversary proceeding. Finally, the court opined that the evidence that Mr. Jones/TR would prevail in the adversary proceeding was so weak that it was highly likely that Trustee would prevail and therefore the minimum payment to unsecured creditors would be $250,000.

On February 23, 2017, the bankruptcy court entered the Settlement Order. The Affiliates filed a timely appeal from the Settlement Order.

On February 24, 2017, the bankruptcy court held the final hearing on the Sale Motion. During the hearing, the bankruptcy court clarified that the assets being sold included the Real Property, the WTGs, and other improvements on the property. Trustee noted that the EDF parties and the estate were transferring whatever rights they had, if any, in the various agreements (such as the SCE PPA and the Trust Agreement) pursuant to the settlement and the terms of the sale.

The bankruptcy court also clarified with counsel for MTC and the Affiliates that they did not assert any adverse claims of ownership against any of the property that was identified on the list of property to be sold. Counsel agreed that MTC and the Affiliates did not assert adverse claims to the listed property and also agreed that the listed property constituted property of the estate.

-25-

In the end, the bankruptcy court approved the sale as being in the best interest of creditors. The court found that there was a meaningful distribution to the creditors when $125,000 would be available for distribution, even if Trustee did not recover any of the funds from the Trust Account. In addition, the bankruptcy court found that the settlement agreement and the supplemental amendment thereto were negotiated by the parties at arms' length and in good faith. Finally, the court found that the chapter 7 estate was not administratively insolvent and that Trustee was not responsible for the fees that arose in the chapter 11 phase of the case. According to the court, Trustee was complying with her fiduciary duty by raising money for creditors that have lower priority than her chapter 7 administrative estate claims.

On February 28, 2017, the bankruptcy court entered the Sale Order which stated that the Buyer is "deemed to be a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m)." The Affiliates filed a timely appeal from the Sale Order.

Under the sale agreement, the Buyer had fourteen days to close the sale, or until April 24, 2017. The Buyer did not close the sale within that time period due to the title company's refusal to insure the sale because of the pending appeal. Trustee and Buyer then worked with a new title company and the sale closed on June 29, 2017. At that time, Trustee filed a report of sale of real property pursuant to Rule 6004(f)(1).

**D.  Post-Appeal Events**

   **1.  Emergency Motion For Stay Pending Appeal:  BAP Nos. CC-17-1069 and CC-17-1070**

The Affiliates moved for a stay pending appeal in connection with the Settlement and Sale Orders in the bankruptcy court (Stay Motions).  In a lengthy and detailed memorandum decision, the bankruptcy court denied the Stay Motions on March 3, 2017.

The Affiliates filed emergency motions for a stay pending appeal of the Settlement and Sale Orders before the BAP on March 9, 2017.  The Affiliates argued, among other things, that they were likely to prevail on appeal of the Settlement and Sale Orders and that without a stay, Trustee would abandon the appeal relating to the EDF litigation and transfer the Real Property and other assets to the Buyer.

On the same day, the Panel entered orders in each appeal, granting a temporary stay and requiring further briefing. Trustee filed an opposition to the motions and EDF filed joinders.  In addition, Alta Mesa 640, LLC, filed an opposition to the stay requests, as did ECM.  The Affiliates filed a reply on March 17, 2017.

A motions Panel found that the Affiliates had not established that they were entitled to a discretionary stay without a bond and that a bond of $5 million would be sufficient to preserve the status quo.  Therefore, the Panel granted the stay of the Settlement Order and the Sale Order conditioned upon the filing of a bond in the amount of $5 million no later than 14 days from the date of the order (April 10, 2017).

-27-

The Affiliates filed a document entitled Emergency Petition for Writ of Mandate Directing Ninth Circuit Bankruptcy Appellate Panel to Recalculate Amount of Supersedeas Bond in the Ninth Circuit. The Ninth Circuit denied the petition.

The Affiliates then filed another motion in the BAP seeking a clarification of the Order Re Motion For Stay Pending Appeal and requesting an extension of the deadline to post the bond. The motions Panel denied the motion and dissolved the stay because the Affiliates failed to post a bond.

**2. Trustee's Motion To Dismiss The Appeals As Moot**

On July 10, 2017, Trustee filed a motion to dismiss these appeals as statutorily, equitably, and constitutionally moot. Trustee argued that the sale transaction had closed and the sale proceeds distributed in accordance with the settlement. Notices required pursuant to the approved sale agreement were delivered to third parties who are not parties to the bankruptcy case or to the sale or settlement. In addition, in accordance with the order approving the settlement, which became effective upon the closing of the sale, Debtor's appeal of EDF's judgment, which is the subject of the order denying abandonment of the EDF Litigation, was formally abandoned (i.e., dismissed) by Trustee and, according to Trustee, could not be revived. In essence, since the settlement and sale were consummated, neither the Real Property nor the EDF Litigation remained assets of the estate which Trustee could abandon. Trustee also argued that since the sale was to a good faith purchaser and there was no stay pending appeal, the appeal of the Sale Order was statutorily moot under § 363(m) and the holding in Onouli-Kona Land Co. v. Richards

-28-

(In re Onouli-Kona Land Co.), 846 F.2d 1170, 1172 (9th Cir. 1988).

In response, the Affiliates challenged the bankruptcy court's determination that the Buyer was a good faith purchaser within the meaning of § 363(m) due to its delay in closing the sale well past the fourteen days set forth in the Sale Order.

In ruling on Trustee's motion, a motions Panel observed that findings on good faith are insufficient for a final and complete determination of the buyer's good faith when a good faith challenge is based on post-sale events. Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002). On this basis, the motions Panel denied Trustee's motion, subject to a final decision by the merits Panel following the conclusion of briefing and oral argument in all four appeals.[6]

### 3. Requests for Judicial Notice

The parties have filed requests for judicial notice with respect to certain papers regarding the transactions at the heart of these appeals. To the extent the pleadings are relevant to the issues before us, we take judicial notice of these documents and others which were filed in the bankruptcy court. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood),

---

[6] Trustee and EDF also moved to dismiss these appeals since the appellants were no longer represented by counsel. We deny this request. The Panel issued an order directing appellants to obtain counsel by a certain date and if they did not do so, the appeals would be submitted without their oral argument. There was nothing in the order which gave appellants any indication that their appeals would be dismissed if they failed to obtain counsel, nor is this a case where appellants failed to defend their appeals as all briefing was complete prior to the withdrawal of their counsel.

-29-

293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

### III.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N).  Subject to our discussions of mootness below, we have jurisdiction under 28 U.S.C. § 158.

### IV.  ISSUES

Whether these appeals are moot;

Whether the bankruptcy court abused its discretion by granting Trustee's Settlement Motion;

Whether the bankruptcy court abused its discretion by granting Trustee's Sale Motion; and

Whether the bankruptcy court abused its discretion by denying Debtor's motions for abandonment of the EDF Litigation and the Real Property.

### V.  STANDARDS OF REVIEW

Mootness is a question of law reviewed de novo. Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014).

We review approval of both a Rule 9019 settlement agreement and a § 363 sale for an abuse of discretion. Fitzgerald v. Ninn Worx Sr., Inc. (In re Fitzgerald), 428 B.R. 872, 880 (9th Cir. BAP 2010) (§ 363 sale); Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003) (Rule 9019 settlement agreement).

Once a bankruptcy court has determined whether "the factual predicates for abandonment . . . are present, the court's decision to authorize or deny abandonment is reviewed for an abuse of discretion." Viet Vu v. Kendall (In re Viet Vu),

-30-

245 B.R. 644, 647 (9th Cir. BAP 2000).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## VI.  DISCUSSION

## A.  Mootness

Trustee continues to assert on appeal these appeals are moot.[7]  "The party moving for dismissal on mootness grounds bears a heavy burden." Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012) (citation omitted); United States v. Gould (In re Gould), 401 B.R. 415, 421 (9th Cir. BAP 2009).

### 1.  Statutory Mootness:  The Sale Order

Under § 363, a trustee may sell property of the estate, other than in the ordinary course of business, after notice and a hearing.  Under § 363(m), the validity of a "sale . . . of property" executed under the terms of § 363 cannot be challenged

---

[7] Investek filed a notice of joinder with Trustee's opening brief contending, among other things, that the Settlement and Sale Orders should be sustained or dismissed as moot.  EDF also joined in Trustee's assertion that the Sale Order is statutorily moot and both the Settlement and Sale Orders are equitably moot. ECM also filed a joinder relating to the Settlement and Sale Orders.  Alta Mesa 640 LLC joined in the opening brief of Trustee and EDF as to all portions of the briefs relating to the Sale Motion and Sale Order.

on appeal unless the sale was stayed pending appeal.[8] "The requirement to seek a stay pending appeal only applies to purchases of estate property that were made in good faith, and is designed to protect the interests of good faith purchasers by guaranteeing the finality of property sales." Adeli v. Barclay (In re Berkeley Delaware Court, LLC), 834 F.3d 1036, 1039 (9th Cir. 2016) (citing In re Onouli-Kona Land Co., 846 F.2d at 1172); In re Fitzgerald, 428 B.R. at 880 ("While a finding of 'good faith' is not an essential element for approval of a sale under [§] 363(b), such a determination becomes important with respect to potential mootness when an appeal is taken from the order authorizing the sale.").

On appeal, the Affiliates argue that the bankruptcy court erred in finding that the Buyer was a good faith purchaser. The Affiliates never raised any objection to the bankruptcy court's findings of good faith. They did not object to Mr. Koya's declaration, which was submitted in support of the Sale Motion. Nor can we find any mention of good faith in their written objections to the Sale Motion or in their arguments at the

---

[8] No comparable provision applies to settlements under Rule 9019. Although a bankruptcy court has discretion to apply § 363 procedures to a sale of claims pursuant to a settlement approved under Rule 9019, that is not what happened here. See In re Berkeley Delaware Court, LLC, 834 F.3d at 1039-49. The record shows that Trustee moved for approval of the compromise separately from the sale of assets, the motion for compromise was not briefed as a sale, and the bankruptcy court did not indicate that it was considering approval of the compromise under § 363. Instead, although the settlement and sale were intertwined, the bankruptcy court separately considered and ruled upon the settlement and the sale. In sum, § 363(m) does not apply to the Settlement Order.

-32-

evidentiary hearing. At this stage in the proceedings, the Affiliates have waived any challenge to the bankruptcy court's findings that the Buyer was a good faith purchaser at the time of the sale and entry of the Sale Order. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]n appellate court will not consider issues not properly raised before the [trial] court."). Even if there were no waiver, we conclude the bankruptcy court's finding of good faith was not clearly erroneous based on the record available to it at the time of its finding.

The Affiliates also challenge the Buyer's good faith due to post-sale events. According to the Affiliates, by making an offer with no intention (or, possibly, ability) to timely close, the Buyer effectively chilled Trustee from further marketing the Property and other potential purchasers from submitting offers on comparable terms. The Affiliates contend that this strategy allowed the Buyer to purchase the real and personal property on better terms that it otherwise would have. According to the Affiliates, the Buyer's "intentional" delay in closing the sale is a "new fact" that came to light after the Sale Order was entered and thus § 363(m) does not apply.

A bankruptcy court's determination of whether a purchaser of property acted in good faith under § 363(m) is a finding of fact reviewed for clear error. In re Thomas, 287 B.R. at 785. We do not make findings of fact on appeal. Generally, "when new facts come to light after the sale authorization order is entered plausibly calling into question the good faith of the purchaser, and when the issue of whether § 363(m) applies is

-33-

critical to the disposition of the appeal, the appropriate procedure is a limited remand to permit the bankruptcy court to hear and consider the new facts." Zuercher Tr. of 1999 v. Schoenmann (In re Zuercher Tr. of 1999), BAP No. NC-14-1440-KuWJu, 2016 WL 721485, at *1 (9th Cir. BAP Feb. 22, 2016); see In re Thomas, 287 B.R. at 785.

There is no need for a limited remand here. Under our case law, the alleged new facts must "plausibly" call into question the good faith of the purchaser. The plausibility requirement insures that bald conclusory allegations of bad faith based on post-sale events cannot be used to make an end run around the safe harbor of § 363(m). Otherwise, the statutory protection afforded to a good faith purchaser would be utterly useless.

The Affiliates' allegations do not identify a plausible factual basis that gives rise to an inference of the Buyer's bad faith based on post-sale events. Standing alone, the Affiliates' unsubstantiated "beliefs" regarding the reason for the Buyer's delay in the closing are insufficient to establish a minimal plausible inference of the Buyer's post-closing bad faith. Moreover, the Affiliates argue that Trustee's "excuse" for the delay in closing due to the title insurance is "questionable." Trustee provided a status report to the bankruptcy court informing the court about the delay in the closing based on a problem with the original title company and its decision to decline to insure the sale due to the appeal. Under these circumstances, the Affiliates' conclusory and unsubstantiated allegation that we should "question" Trustee's statements to the bankruptcy court is also insufficient to

-34-

establish a minimal plausible inference of the Buyer's post-closing bad faith.

In sum, the Affiliates' allegations do not plausibly call into question the Buyer's bad faith. Statutory mootness should thus apply to the Sale Order as the Affiliates failed to post the bond which would have stayed the Sale Order pending appeal.

## 2. Equitable Mootness

However, even if the Affiliates' appeal of the Sale Order is not statutorily moot under § 363(m), we conclude that it is moot under the doctrine of equitable mootness. See Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC), 823 F.3d 966, 968 (9th Cir. 2016) ("[S]tatutory mootness codifies part, but not all, of the doctrine of equitable mootness.") (citing Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 35 (9th Cir. BAP 2008)); In re Fitzgerald, 428 B.R. at 882 ("Even though Fitzgerald's appeal is not statutorily moot under § 363(m) [due to lack of findings], his appeal may still be moot under the general principles of mootness."); see also Bonnett v. Gillespie (In re Irish Pub Arrowhead Land, LLC), BAP No. 13-1024-PaKuD, 2014 WL 486955, at *5 (9th Cir. BAP Feb. 6, 2014) ("To be sure, equitable mootness applies to appeals concerning sales under § 363.").

We may dismiss an appeal if we deem it equitably moot. In re PW, LLC, 391 B.R. at 33–35. Equitable mootness is "a judge-made abstention doctrine unrelated to the constitutional prohibition against hearing moot appeals." Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.), 771 F.3d 1211, 1214 (9th Cir.

2014). The doctrine holds that even where effective relief is theoretically possible, and the appeal is therefore not constitutionally moot, courts may "dismiss appeals of bankruptcy matters when there has been a 'comprehensive change of circumstances . . . so as to render it inequitable for [the] court to consider the merits of the appeal.'" Id. (quoting In re Thorpe Insulation Co., 677 F.3d at 880). In other words, "[e]quitable mootness concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to unscramble the eggs." In re Castaic Partners II, LLC, 823 F.3d at 968.

Given the intertwined nature of the Settlement and Sale Orders, it is not necessary to analyze separately whether each appeal is equitably moot. The compromise with the Lien Creditors under Rule 9019 was the cornerstone of the asset sale and integral to the distributions made to the bankruptcy estate from the sale proceeds. Therefore, we consider together whether the Settlement and Sale Orders are equitably moot.

The Ninth Circuit follows a four-step process to determine whether an appeal is equitably moot:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

In re Thorpe, 677 F.3d at 881. Applying this four-factor test, we conclude that the appeals of the Settlement and Sale Orders

-36-

are equitably moot.

**The Stay:** The Affiliates sought and obtained a stay from a motions Panel, which was conditioned upon the posting of a bond. The Panel dissolved the stay when the Affiliates failed to post the bond. Although the Affiliates did not sit on their rights and they obtained a temporary stay from the Panel, they also failed to maintain the status quo by posting the bond. Regardless, in this Circuit, "[t]he failure to gain a stay is one factor to be considered in assessing equitable mootness, but is not necessarily controlling." In re Thorpe, 677 F.3d at 881-82.

**Substantial Consummation:** We next consider whether substantial consummation of the settlement and sale has occurred. Although Thorpe focused on plan consummation, the Ninth Circuit has held that the same general principles apply to any equitable mootness analysis. In re Mortgs. Ltd., 771 F.3d at 1271.

Here, because there was no stay, the full execution of the settlement and sale agreements has occurred, including the sale of the real and personal property, the transfer of various agreements, the dismissals of litigation pertaining to the Lien Creditors, and the distribution of the sale proceeds. The settlement and sale are more than substantially consummated; they are essentially complete.

The settlement agreement was the result of a complex negotiated agreement to resolve the Lien Creditors' claims and obtain a distribution from the sale proceeds for the estate. In conformance with the settlement agreement, Trustee filed a

-37-

notice of abandonment of the EDF appeal and the appeal has now been closed. ECM dismissed its complaint on its mechanic's lien claim against Debtor with prejudice, and the California Court of Appeal dismissed the Investek appeal at Investek's request.

Furthermore, the sale proceeds have been distributed to the Lien Creditors and other third parties, including payment of defaulted property taxes to the County of Riverside. Various liens and other matters of record have been reconveyed, and letters to SCE and City National Bank where the Trust Account is located have been sent, advising them of the sale and assignment of all rights to the Buyer.

Substantial consummation of the settlement and sale is the kind of "comprehensive change of circumstances" which makes granting the relief sought in these appeals inequitable. At this point, reversing the settlement or sale orders requires "unscrambling the eggs." In re Castaic Partners II, LLC, 823 F.3d at 968; see also Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.), 35 F.3d 1348, 1351 (1994).

Although this factor weighs in favor of finding the appeals of the Settlement and Sale Orders moot, the law in this Circuit requires that we still look at the third and fourth prongs of the equitable mootness test. In re Mortgs. Ltd., 771 F.3d at 629 (recognizing that "[s]ubstantial consummation of a bankruptcy plan often brings with it a comprehensive change in circumstances that renders appellate review of the merits of the plan impractical," but that courts must still consider whether it is possible to "fashion effective relief").

**Innocent Third Parties:** The question posed by the third _Thorpe_ factor is "whether modification of the plan of reorganization would bear unduly on the innocent." _In re Thorpe_, 677 F.3d at 882. Equitable mootness inquires beyond the impossibility of a remedy and considers the consequences of a reversal on third parties who acted in reliance on an order authorizing a sale (or settlement). _In re PW, LLC_, 391 B.R. at 33. The remedy the Affiliates seek is the outright reversal of the Settlement and Sale Orders. The complete unraveling of the settlement and sale would have a negative effect on parties intended to be protected by the doctrine of equitable mootness, namely innocent third parties not before the court.

Trustee has distributed over $50,000 to the County of Riverside for past-due taxes and over $180,000 to the brokers involved in the sale. Reversal or alteration of the Settlement and Sale Orders would require these third parties to return distributions from the estate. In addition, although they are before the Panel, we cannot ignore the Buyer or the Lien Creditors. There is no indication that the Buyer had any connection to this case before the sale of the Real Property and personal property was advertised. The sale and settlement have closed, and possession of the Real Property and other assets have been turned over to the Buyer who has commenced operations and negotiations of a new PPA with SCE since the existing PPA expires in 2018. ECM and Investek have dismissed their litigation against Debtor, and EDF has given up a portion of its claim and purported right to the Trust Funds in exchange for

-39-

Trustee's dismissal of the EDF Litigation. The Lien Creditors have been paid.

Under these circumstances, the reliance of the Buyer and the other parties on the finality of the Sale Order is consistent with the public policy in favor of maximizing debtor's estates and facilitating sales. In the end, this factor supports Trustee's contention that these appeals are equitably moot.

**Effective And Equitable Relief**: The fourth factor, whether the bankruptcy court can fashion effective and equitable relief, is generally the most important of the four factors. In re Thorpe, 677 F.3d at 883. Here, is not possible to fashion relief that is both effective and equitable.

Even if modification or vacation of the Settlement and Sale Orders were theoretically possible, it would be impracticable — "unscrambling the egg" — to bring the parties back to the same positions they had been in before Trustee sold the real and personal property to the Buyer free and clear of the Lien Creditors' liens. Trustee has distributed the sale proceeds to the Lien Creditors, ECM and Investek reduced their liens and dismissed their litigation against Debtor, and EDF reduced its lien in exchange for Trustee's abandonment of the EDF Litigation. Trustee transferred the real and personal property to the Buyer which has had possession of it for months.

Returning to the status quo would require imposing significant costs and possibly necessitate time-consuming and costly litigation. Clawing back money from the Lien Creditors, the County of Riverside, and other third parties would be either

impossible or inequitable.  Indeed, this is not a case where the bankruptcy court can fashion relief by simply ordering additional disbursements of money by one of the parties on appeal.  Cf. Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.), 378 F.3d 916, 922 (9th Cir. 2004) (requiring one party to disgorge money it has received does not require the unraveling of a complicated bankruptcy plan).

Moreover, if we were to reverse or modify the Settlement Order on appeal, MTC's bankruptcy estate - and the equitable distribution among creditors that it represents - would be left with neither the $125,000 guaranteed distribution from the sale proceeds nor the potential $250,000, if Trustee succeeds in establishing that TR has no ownership to the Trust Funds.  If we were to reverse or modify the Sale Order on appeal, Trustee would inherit assets that are wasting and the sale worth $3.18 million would be lost.

Furthermore, as the bankruptcy court succinctly observed, Mr. Jones and his related entities never provided evidence of a better alternative than what Trustee achieved.  Mr. Jones, through his Affiliates, also fails to explain how we can provide effective relief that would not disturb the numerous third parties who have been involved and affected by the consummation of the Settlement and Sale Orders.  In short, vacating the Settlement and Sale Orders would not only leave the unsecured creditors with nil, but would also frustrate the orderly administration of Debtor's estate.  "[T]he principle of dismissal of an appeal for lack of equity . . . is justified to prevent frustration of orderly administration of estates under

-41-

various provisions of the Bankruptcy Act." Trone v. Roberts Farms, Inc. (In re Roberts Farms), 652 F.2d 793, 798 (9th Cir. 1981).

In the end, the Affiliates' failure to post the bond after obtaining a stay allowed the parties to substantially consummate the settlement and sale. This is the kind of comprehensive change of circumstances that renders it inequitable for the Panel to consider the merits of these appeals.

Since all factors of the Thorpe test point in favor of applying the equitable mootness doctrine, we find the appeals of the Settlement and Sale Orders equitably moot. Due to our conclusion, Debtor's appeals of the orders denying abandonment of the EDF Litigation and Real Property are rendered moot as well.

**B.    The Merits**

**1.    The Settlement Order**

The settlement agreement has been substantially consummated, and the appeal of the Settlement Order is equitably moot. Nevertheless, to the extent relief could be fashioned at this juncture, no such relief is warranted.

Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Although the bankruptcy court has "great latitude" in authorizing a compromise, it may only approve a proposal that is "fair and equitable" to the creditors. In re Woodson, 839 F.2d at 620. The settlement should be in the best interests of the estate and "reasonable, given the particular circumstances of

-42-

the case." A & C Props., 784 F.2d at 1381. And while a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter, the trustee "has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." Id.

In determining the "fairness, reasonableness and adequacy" of a proposed compromise, a bankruptcy court must consider:

(a) The probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id. "When assessing a compromise, the court needs not rule on disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits in not required." Burton v. Ulrich (In re Schmitt), 215 F.B. 417, 423 (9th Cir. 1997). The reasonableness of a compromise is determined by the particular circumstances of each case . . . . Because the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." In re Walsh Const., Inc., 669 F.2d 1325, 1328 (9th Cir. 1982).

Here, the bankruptcy court recited the four A&C factors when it approved the settlement between Trustee and each of the Lien Creditors. The record shows that the court throughly reviewed the evidence regarding the disputed claims of the Lien Creditors and considered Trustee's opinions regarding her probability of success and the costs of litigation. The

-43-

bankruptcy court greatly discounted Mr. Jones' opinion regarding the merits of the litigation with Investek, ECM, and EDF, and further found him not credible. "If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 573-574 (1985); see Hansen v. Moore (In re Hansen), 368 B.R. 868, 874-875 (9th Cir. BAP 2007). The record amply supports the court's findings with respect each of the four A&C factors.

Moreover, our decision in In re KVN Corporation does not preclude approval of the settlement. There, the Panel noted the general rule prohibiting the sale of fully encumbered property which would yield no benefit to unsecured creditors. In re KVN Corporation, 514 B.R. at 6. Such a sale raises a presumption of impropriety, but the presumption is rebuttable. Id. at 6-7.

> To rebut the presumption, the case law directs the following inquiry: Has the trustee fulfilled his or her basic duties? Is there a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors? Have the terms of the carve-out agreement been fully disclosed to the bankruptcy court? If the answer to these questions is in the affirmative, then the presumption of impropriety can be overcome.

Id. at 8.

The bankruptcy court found that Trustee had performed her duties and that there was a benefit to the estate because the unsecured priority and non-priority creditors were guaranteed $125,000 from the sale proceeds. Although the court observed that the funds may end up paying allowed chapter 11 administrative fees, there was still the prospect that funds would flow to the unsecured creditors. Additionally, for purposes of approving the settlement, the bankruptcy court

-44-

found, based on the evidence before it, that it was "highly likely" that priority and non-priority creditors would receive $250,000 because TR would not prevail on its claims to $2.8 million in the Trust Account. Taken together, these factual findings, which are logical, plausible, and supported by the record, show that Trustee rebutted any presumption of impropriety.

Finally, we summarily dispose of the Affiliates' argument that the bankruptcy court overstepped its role in approving the settlement. It is the bankruptcy court's duty to enforce the law under the Bankruptcy Code. The court's tentative decision posted before the final hearing on the Settlement Motion simply pointed to what the judge saw as particular difficulties with the settlement and obstacles to approval. We know of no decision which states that a judge is prohibited from forming preliminary legal conclusions based upon facts already in the record and providing guidance to the moving parties in a tentative ruling which they could choose to follow — or not. In sum, the bankruptcy court properly exercised its discretion in approving the settlement.

**2. The Sale Order**

We likewise find that the bankruptcy court did not abuse its discretion in granting Trustee's Sale Motion. The record shows there is no dispute that the property sold was property of the bankruptcy estate nor did the sale alter the rights of anyone to the $2.8 million in the Trust Account — disputes over ownership of the Trust Funds were preserved. Finally, as noted above, at least $125,000 will flow to creditors beyond chapter 7

-45-

administrative creditors.

### 3. The Orders Denying Abandonment

Due to our affirmance of the Settlement and Sale Orders, the appeals of the orders denying abandonment of the EDF Litigation and Real Property are constitutionally moot. We can offer no effective relief regarding abandonment when the EDF Litigation and Real Property are no longer property of MTC's estate.

### VII. CONCLUSION

For the reasons outlined above, we DISMISS the appeal of the Sale Order on statutory mootness grounds. Even if the appeal of the Sale Order is not statutorily moot, we conclude that it is equitably moot as is the Settlement Order, which makes DISMISSAL of all the appeals appropriate on mootness grounds.

Finally, even if the Settlement and Sale Orders are not equitably moot, we AFFIRM those orders on the merits. Due to our affirmance, we DISMISS the appeals denying abandonment of the EDF Litigation and Real Property on constitutional mootness grounds.

-46-