FILED

JUL 11 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. NC-13-1318-JuKuD |
| | ) | |
| KVN CORPORATION, INC., | ) | Bk. No. 13-10477 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | M E M O R A N D U M[*] |
| LINDA S. GREEN, Chapter 7 | ) | |
| Trustee, | ) | |
| | ) | |
| Appellant. | ) | |
| _____ | ) | |

Submitted Without Oral Argument on July 11, 2014[**]

Filed - July 11, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

_____

Appearances:     Jean Barnier, Esq., of MacConaghy & Barnier, PLC,
on brief for appellant Linda S. Green, Chapter 7
Trustee.

_____

Before:  JURY, KURTZ, and DUNN, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

[**] On June 18, 2014, this Panel entered an order determining
that this appeal was suitable for submission without oral
argument.

Linda S. Green, chapter 7[1] trustee (Trustee) in the bankruptcy estate of KVN Corporation, Inc. (KVN or debtor), filed a motion seeking approval of a stipulation between Trustee and Wilshire State Bank (Bank) which contemplated a sale of the Bank's fully encumbered property in exchange for a carve out from the lien proceeds paid to the bankruptcy estate. The bankruptcy court denied the motion and Trustee's later filed motion for reconsideration. This appeal followed. For the reasons discussed below, we REVERSE and REMAND this matter with instructions to the bankruptcy court to enter an order granting Trustee's motion.

## I. FACTS

The essential facts are few and undisputed. KVN owned a sporting goods store. KVN was indebted to the Bank under the terms of a note in the original principal sum of $915,000. The note was secured by KVN's real property and by substantially all of its business assets.

On March 8, 2013, KVN filed its chapter 7 petition and Green was appointed chapter 7 trustee. In Schedule A, debtor listed inventory including "liquor, gun, ammunition, cleaning kits, and fishing reels" with a value of $28,950. Debtor failed to reflect the Bank's security interest in the inventory, but listed the Bank as a secured creditor against its real property in Schedule D. At the time of the filing, debtor owed the Bank approximately $309,569. In Schedule F, debtor listed unsecured claims in the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

amount of $107,565. After the filing, Trustee removed rifles and guns from debtor's store and placed them in a gun storage locker at the cost of $25 per day. Trustee employed an auctioneer to conduct a public sale of these assets, which would likely bring $10,000. After reviewing public records, Trustee learned that the Bank held a perfected UCC-1 on all of debtor's inventory, including the firearms. Trustee contacted the Bank and informed it that the firearms had been removed for safekeeping and that the Bank could retrieve them.

In late April 2013, the Bank contacted Trustee and requested her assistance in selling the firearms through the auctioneer she had employed. The Bank agreed that it would pay for the storage costs and split the net proceeds with the bankruptcy estate. Trustee agreed based on her belief that the transaction would net between $4,200 to $4,400 for the benefit of unsecured creditors. Trustee and the Bank entered into a stipulation setting forth these terms.

Trustee subsequently filed a motion seeking approval of the stipulation from the bankruptcy court. At the May 10, 2013 hearing, the bankruptcy court denied Trustee's motion. Initially, the court made reference to Charles Duck, a former trustee in the Northern District of California, who "had a habit of making deals with secured creditors even though there was no equity he would sell the — he would liquidate the asset and have various types of arrangements for sharing the proceeds. And I

- 3 -

put a stop to that many years ago."[2]  The court further opined:

> [T]he role of a chapter 7 trustee is to closely examine the secured creditor's security interest and defeat it, if the trustee can.  And, if not, turn the asset over to the secured creditor.  It is a slippery slope, to my mind, when the debtor and the secured creditor start making deals.  I do not believe it's the appropriate role of a chapter 7 trustee to liquidate fully-encumbered assets.

Counsel for Trustee and the Bank both emphasized that there was full disclosure, everything was above board, and there would be a return to the unsecured creditors.  The Bank's counsel further explained that the auctioneer hired by Trustee had the expertise to sell the firearms in a lawful manner which caused it to agree to release its lien on fifty percent of the proceeds.  The bankruptcy court responded: "I have no problem if your client wants to waive its security, and the trustee can liquidate it in the ordinary course.  I just have a problem with the sharing arrangement."  The court opined that "arrangements like this are dangerous because they can lead to improper activity."  The court concluded:  "So in this particular case I do not believe that the benefits to the estate outweigh my concerns for the proper role of the trustee and the bankruptcy system."  On May 15, 2013, the bankruptcy court entered the order denying approval of the stipulation.

Trustee moved for reconsideration.  Trustee argued that there was nothing in the bankruptcy code which prevented her from

---

[2] Charles Duck is a former bankruptcy trustee who was convicted for embezzling more than $1.9 million from various bankruptcy estates in late 1989.  See Dickinson v. Duck (In re Duck), 122 B.R. 403, 404 (Bankr. N.D. Cal. 1990).  The bankruptcy court made clear that it was not equating Ms. Green with Mr. Duck.

- 4 -

entering into agreements with secured creditors or that stated a chapter 7 trustee's proper role was to liquidate only unsecured assets. Trustee further asserted that there was nothing in the agreement between her and the Bank which suggested the parties were acting in an improper manner. Trustee noted that § 506(c) provided authority that administrative expenses could be paid from the sale of secured assets even if there was no benefit to unsecured creditors and when the secured creditor caused or consented to the expense. See Compton Impressions, Ltd. v. Queen City Bank N.A. (In re Compton Impressions), 217 F.3d 1256 (9th Cir. 2000).

On June 14, 2013, the bankruptcy court heard the matter and took it under advisement. Two days later, the bankruptcy court issued its Memorandum of Decision and denied Trustee's motion for reconsideration. The bankruptcy court opined that arrangements between trustees and secured creditors raised a presumption of impropriety and found that Trustee had not rebutted that presumption. On June 17, 2013, the court entered the order denying Trustee's motion for reconsideration. Trustee timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (N) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion by denying approval of the stipulation between Trustee and the Bank which contemplated a sale of the Bank's fully encumbered property

- 5 -

in exchange for a carve out from the lien proceeds to the bankruptcy estate.

## IV.   STANDARD OF REVIEW

The bankruptcy court's decision denying approval of the stipulation between Trustee and the Bank is reviewed for abuse of discretion.  A & A Sign Co. v. Maughan, 419 F.2d 1152, 1155 (9th Cir. 1969).  A bankruptcy court abuses its discretion when it applies the incorrect legal rule or its application of the correct legal rule is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010).

## V.   DISCUSSION

**A.   The General Rule Is That The Sale Of Fully Encumbered Property Is Prohibited.**

We begin with an overview of the chapter 7 trustee's duties under § 704 and his or her power to sell under § 363.  Under § 704(a)(1), a chapter 7 trustee has the duty to "collect and reduce to money the property of the estate for which such trustee serves . . . ."  To fulfill this duty, the trustee's "primary job is to marshal and sell the assets so that those assets can be distributed to the estate's creditors."  U.S. Tr. v. Joseph (In re Joseph), 208 B.R. 55, 60 (9th Cir. BAP 1997).  Indeed, a core power of a bankruptcy trustee under § 363(b) is the right to sell "property of the estate" for the benefit of a debtor's creditors. See § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . .").  Under § 363(f)(2), a

- 6 -

bankruptcy trustee may sell property of the estate free and clear of a lien or other interest where the holder of the lien or interest consents.

It is universally recognized, however, that the sale of a fully encumbered asset is generally prohibited. Carey v. Pauline (In re Pauline), 119 B.R. 727, 728 (9th Cir. BAP 1990); In re Scimeca Found., Inc., 497 B.R. 753, 781 (Bankr. E.D. Pa. 2013) ("It is generally recognized that a chapter 7 trustee should not liquidate fully encumbered assets, for such action yields no benefit to unsecured creditors.") (citing Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.), 816 F.2d 238, 245–46 (6th Cir.1987)); In re Covington, 368 B.R. 38, 41 (Bankr. E.D. Cal. 2006) ("[W]hen an asset is fully encumbered by a lien, it is considered improper for a chapter 7 trustee to liquidate the asset."); In re Feinstein Family P'ship, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) ("Clearly, the Code never contemplated that a Chapter 7 trustee should act as a liquidating agent for secured creditors who should liquidate their own collateral."); In re Preston Lumber Corp., 199 B.R. 415, 416 (Bankr. N.D. Cal. 1996) (actual conflict of interest arises when the trustee sees he can make more money for himself by liquidating collateral for a secured creditor than he can by asserting a claim against the secured creditor on behalf of the estate); In re Tobin, 202 B.R. 339, 340 (Bankr. D.R.I. 1996) ("The mission of the Chapter 7 trustee is also to enhance the debtor's estate for the benefit of unsecured creditors.").

The prohibition against the sale of fully encumbered property is also embedded in the official Handbook for Chapter 7

- 7 -

Trustees in several places:

> Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest.

U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees at 4-16 (2012) (hereinafter, Handbook). The Handbook further provides:

> A chapter 7 case must be administered to maximize and expedite dividends to creditors. A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.

Id. at 4-1. Finally,

> [i]n asset cases, when the property is fully encumbered and of nominal value to the estate, the trustee must immediately abandon the asset and contact the secured creditor immediately so that the secured creditor can obtain insurance or otherwise protect its own interest in the property. [§§] 554, 704.

Id. at 4-7. Taken together, the above-referenced authorities stand for the proposition that sales of fully encumbered assets are generally improper. In that instance, the trustee's proper function is to abandon the property, not administer it, because the sale would yield no benefit to unsecured creditors.

In fact, "'the principle of abandonment was developed . . . to protect the bankruptcy estate from the various costs and burdens of having to administer property which could not conceivably benefit unsecured creditors of the estate.'" In re Pauline, 119 B.R. at 728; see also In re K.C. Mach. & Tool

Co., 816 F.2d at 246 ("[I]n enacting § 554, Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions."). However, "[a]bandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so. . . . Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered." In re K.C. Mach. & Tool Co., 816 F.2d at 246; see also Vu v. Kendall (In re Vu), 245 B.R. 644, 647–48 (9th Cir. BAP 2000).

**B.      There Is No Per Se Rule That Bans Carve-Out Agreements.**

Despite the general rule prohibiting the sale of fully encumbered property, chapter 7 trustees may seek to justify the sale through a negotiated carve-out agreement with the secured creditor. A carve-out agreement is generally understood to be "an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position." Costa v. Robotic Vision Sys., Inc. (In re Robotic Vision Sys., Inc.), 367 B.R. 232, 240 n.23 (1st Cir. BAP 2007); see also In re Besset, 2012 WL 6554706, at *5 n.5 (9th Cir. BAP 2012). There is no per se rule that bans this type of contractual arrangement: "[C]reditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including to share them with other creditors." Official Unsecured Creditors Comm. v. Stern

- 9 -

(In re SPM Mfg. Corp.), 984 F.2d 1305, 1313 (1st Cir. 1992).[3]

The Handbook also provides some guidance on carve-out agreements in the context of a sale:

> A trustee may sell assets only if the sale will result in a meaningful distribution to creditors. In evaluating whether an asset has equity, the trustee must determine whether there are valid liens against the asset and whether the value of the asset exceeds the liens. The trustee may seek a 'carve-out' from a secured creditor and sell the property at issue if the 'carve-out' will result in a meaningful distribution to creditors. . . . If the sale will not result in a meaningful distribution to creditors, the trustee must abandon the asset.

Handbook at 4-14.

**C.    The Genesis Of The Bankruptcy Court's "Presumption Of Impropriety" Is Based On Past Abuses Of Carve-Out Agreements Such As This.**

Although there is no per se ban on carve-out agreements, agreements such as the one before us have been reviewed under a standard of heightened scrutiny due to past abuses. One court noted:

> It is not rare that trustees of Chapter 7 estates are approached by secured creditors who seek the trustee's help to liquidate fully encumbered collateral. They realize that before the trustee is willing to go along with the proposition the secured creditor must put a little sweetener in the deal by agreeing to pay sufficient sums to compensate the trustee and to pay other costs of administration. The more sophisticated trustee may demand that the secured creditor throw in a pittance to pay a meaningless dividend to unsecured creditors, making the arrangement more palatable to the court. The proposition is very attractive from the secured creditor's point of view and economically sound because it may stave off a possible attempt by the trustee to seek to surcharge the collateral and, most importantly, save the potentially expensive cost of a foreclosure suit. The offered deal is also attractive to the trustee because it assures that he or she will

---

[3] The SPM court also held that the bankruptcy court had no authority to control how the secured creditor disposed of the proceeds once it received them. Id. at 1313.

- 10 -

> earn a commission in an otherwise no asset case and may seek a commission based on the gross sales price and not on the net distributed to parties of interest.

In re Feinstein Family P'ship, 247 B.R. at 507; see also In re Pauline, 119 B.R. at 728 ("Some of the early cases condemned this particular practice [,] . . . and decried the practice of selling burdensome or valueless property simply to obtain a fund for their own administrative expenses.") (citing Standard Brass Corp. v. Farmers Nat'l Bank, 388 F.2d 86 (7th Cir. 1967); Miller v. Klein (In re Miller), 95 F.2d 441 (7th Cir. 1938); and Seaboard Nat'l Bank v. Rogers Milk Prods. Co., 21 F.2d 414 (2d Cir. 1927)). Against this historical backdrop, coupled with the bankruptcy court's first-hand experience with Mr. Duck, there is support for the bankruptcy court's conclusion that a presumption of impropriety arises under these circumstances.

We do not agree with Trustee's argument that the literal text of §§ 704(a)(1), 506(c), and 363(f)(2) "compels the conclusion that the 'presumption of impropriety' suggested by the bankruptcy court . . . was error." The issue presented in this appeal is not simply a matter of interpreting any of these statutes where the "plain language" applies. If this were the case, we could ignore the well-settled case law, including our own, that espouses the proposition that a sale of fully encumbered property is generally inappropriate because there is no benefit to unsecured creditors. We would also undermine the guidance provided to chapter 7 trustees in the Handbook, which Trustee fails even to mention in this appeal.

Further, in our view, § 506(c) does not apply under these circumstances. Substantively, the elements that Trustee must

- 11 -

prove for a § 506(c) claim are different from those needed to justify a sale of fully encumbered property in connection with a carve-out agreement. See In re Cascade Hydraulics and Util. Serv., Inc., 815 F.2d 546, 548 (9th Cir. 1987) (under § 506(c) the trustee must show that the expenses incurred were reasonable, necessary, and beneficial to the secured creditor and to satisfy the benefit part of the test, the trustee must "establish in quantifiable terms that [she] expended funds directly to protect and preserve the collateral."); compare In re Bunn-Rodemann, 491 B.R. 132 (Bankr. E.D. Cal. 2013) (finding "incentive payment" arrangement between secured creditor and trustee for sale of fully encumbered real property "consistent" with § 506(c)).

Of course, the presumption of impropriety is a rebuttable one. To rebut the presumption, the case law directs the following inquiry: Has the trustee fulfilled his or her basic duties? Is there a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors? Have the terms of the carve-out agreement been fully disclosed to the bankruptcy court? If the answer to these questions is in the affirmative, then the presumption of impropriety can be overcome, as it is in this case.

First, the record shows that Trustee fulfilled her basic duties. She examined the Bank's asserted security interest against the firearms and found its lien valid. See Handbook at 4-5. She then informed the Bank where the firearms were so it could retrieve its collateral. See Handbook at 4-7. The Bank subsequently approached Trustee to conduct the sale. Second, Trustee fully disclosed the terms of the carve-out agreement to

- 12 -

the bankruptcy court and the creditor body, which is contrary to any inference of a secret side deal between Trustee and the Bank. Next, Trustee demonstrated that the lien proceeds would provide a benefit to the unsecured creditors. Due to the benefit, as more fully discussed below, we cannot infer that Trustee was administering the asset for primarily her own benefit. See Handbook at 4-1. In short, none of these undisputed facts suggest any type of abuse by Trustee.

The undisputed facts also show that the carve out from one-half of the lien proceeds takes this case out of the generally recognized rule that abandonment of fully encumbered property is appropriate because no unsecured creditor could benefit from a sale. At first blush, $5,000 from the lien proceeds does not seem like much of a benefit. However, even if the net recovery (i.e., recovery after all costs associated with obtaining the recovery) is a small dollar amount, it is still a benefit to the unsecured creditors in this case. Here, Trustee previously sold an unencumbered liquor license for approximately $103,000 and added to that amount will be the proceeds from the carve out.[4] Accordingly, the proceeds from the sale of the firearms will contribute to what already appears to be a "meaningful distribution" to unsecured creditors.

Under these circumstances, the Bank's agreement to the carve out essentially operates as an assignment of equity in the firearms for the benefit of the unsecured creditors, thus

---

[4] We take judicial notice of Dkt. No. 56 in the underlying bankruptcy case pursuant to Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

- 13 -

justifying Trustee's action in selling the fully encumbered property rather than abandoning it. "Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered." In re Vu, 245 B.R. at 647–48.

In sum, the bankruptcy court's conclusion that Trustee failed to rebut the presumption of impropriety is illogical and without support in inferences that may be drawn from the facts in the record. See Loew, 593 F.3d at 1139. The record demonstrates that Trustee fulfilled her basic duties, unsecured creditors will benefit, and the terms of the carve-out agreement were fully disclosed. Because the presumption of impropriety was rebutted, the bankruptcy court abused its discretion in denying Trustee's motion seeking approval of the stipulation.

**D. The Case Law Cited By The Bankruptcy Court In Support Of Its Decision Is Distinguishable.**

The bankruptcy court cited In re Pauline, In re Preston Lumber, and In re Covington in support of its decision denying approval of the stipulation. Collectively, these cases stand for the proposition that overencumbered property generally should be abandoned, not administered, because there is no benefit to unsecured creditors. As noted above, most courts recognize this general rule. Furthermore, in each case, the court found the trustee's actions inappropriate under the circumstances of the case. However, none of these cases support the bankruptcy court's decision in this case.

In Pauline, the chapter 7 trustee decided to abandon the debtor's home and then reversed his decision, stating his

- 14 -

intention to sell it. The debtor moved to compel the trustee to abandon the property. After considering the motion, the bankruptcy court required the trustee to find a buyer for the debtor's home within 60 days at a price sufficient to satisfy all liens on the home plus the allowed amount of the debtor's homestead exemption, in the absence of which the debtor's home would be deemed abandoned. In re Pauline, 119 B.R. at 728. On appeal, the Panel affirmed the bankruptcy court's decision in part, because (1) the IRS did not ask the trustee to sell the property for the IRS' benefit, and (2) the trustee apparently had "engaged in . . . conduct designed to enhance the size of his bank account rather than the size of the funds available for the debtor's unsecured creditors . . . ." Id. at 728. Unlike in Pauline, the Bank here supports Trustee's sale due to the auctioneer's expertise in selling the firearms in a lawful manner and, as discussed above, a sale will benefit unsecured creditors, not just increase the fees paid to Trustee.[5]

The holding in In re Preston Lumber Corp. also does not drive the outcome in this case. There, the secured creditor, Sumitomo Bank and the debtor's industrial lessor had a dispute as to the priority of their lien rights in fully encumbered sawmill equipment and rolling stock. Sumitomo convinced the chapter 7 trustee to sell the assets free and clear of liens, in exchange for a pre-fixed commission for the trustee and $35,000 fee for

---

[5] Whether or not Trustee will be awarded fees from the eventual sale of the firearms was not at issue before the bankruptcy court nor is it relevant to our analysis in this appeal. The bankruptcy court may consider the appropriate fee at a hearing on compensation.

the trustee's attorney. The bankruptcy court found the arrangement "highly improper" on the grounds that (1) there was no resulting benefit to the estate and (2) the trustee and his counsel were motivated by personal gain. In re Preston Lumber Corp., 199 B.R. at 416-17. The case is distinguishable on its face because, as discussed above, there is no evidence here that Trustee was motivated by personal gain and there likely is a resulting benefit to unsecured creditors arising out of the sale.

Lastly, In re Covington, 368 B.R. 38, is inapposite. Because the debtor in Covington owed a domestic support obligation, the trustee argued that § 522(c)(1) required the disallowance of the debtor's exemption in a bank deposit and an automobile to permit those assets to be liquidated and the proceeds paid to the holder of the domestic support obligation claim. The bankruptcy court rejected this argument, noting that "§ 522(c)(1) does not provide for the disallowance of an exemption. Rather, it provides that property exempted by the debtor is nonetheless liable for a domestic support obligation. Disallowance of the exemption is not a predicate to the enforcement of a domestic support obligation." Id. at 40-41. The court also denied the trustee's request to sell the assets because (1) the property was removed from the bankruptcy estate since it was exempt and thus there was no property of the estate to administer and (2) although the assets were not fully encumbered, the trustee sought to sell the assets for the benefit of one creditor rather than for unsecured creditors generally. Id. at 41. "Given that the Madera County Child Support Department is collecting the claim for the benefit of the claim

- 16 -

holder, it is clear that the assistance of the trustee, which would come at a price, is unnecessary. By enforcing the domestic support obligation in state court, the trustee's administrative expenses will be avoided." Id. Unlike Covington, the asset here is not exempt and Trustee is liquidating the asset for the general unsecured creditor body.

## VI. CONCLUSION

For the reasons stated, we REVERSE and REMAND this matter with instructions to the bankruptcy court to enter an order granting Trustee's motion.