
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>FARIBORZ ZANJANEE BABAEE;<br>MALIHE P. BABAEE,<br><div align="center">Debtors.</div> | BAP No. CC-21-1230-LGT<br>BAP No. CC-21-1231-LGT<br>(related appeals)<br><br>Bk. No. 8:20-bk-10268-TA |
| FARIBORZ ZANJANEE BABAEE;<br>MALIHE P. BABAEE,<br><div align="center">Appellants,</div><br>v.<br><br>RICHARD A. MARSHACK, Chapter 7<br>Trustee,<br><div align="center">Appellee.</div> | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Theodor C. Albert, Chief Bankruptcy Judge, Presiding

Before: LAFFERTY, GAN, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Fariborz Zanjanee Babaee and Malihe P. Babaee

("Debtors") appeal the bankruptcy court's orders approving the chapter 7

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are the Federal Rules of

<div align="center">1</div>

trustee's ("Trustee") motions to (1) sell their Newport Beach residence (the "Property") and (2) approve agreements with two junior secured creditors, under which those creditors would subordinate and transfer to the estate a portion of their liens. Absent the agreements, the sale would generate no distribution to unsecured creditors. Debtors argue that the bankruptcy court lacked authority to approve the motions because the agreements overrode their statutory exemption rights.

We DISMISS for lack of standing.

## FACTS

Debtors filed a joint chapter 7 petition in January 2020. They listed the Property on Schedule A with a value of $2.9 million. Schedule D listed four consensual liens and two tax liens on the Property totaling approximately $2.6 million. Debtors claimed a $175,000 homestead exemption under California Code of Civil Procedure § 704.730. They also scheduled nonpriority unsecured claims totaling $430,027.

In April 2020, Trustee filed a Notice of Assets; he then hired a real estate agent to market the Property. Trustee eventually received an offer to purchase the Property for $2,860,000. He negotiated agreements with two secured creditors, Comerica Bank ("Comerica"), the holder of the third position deed of trust, and Valley Economic Development Center, Inc. ("VEDC"),[2] the holder of the fourth position deed of trust, to subordinate a

Bankruptcy Procedure.

[2] Some of the parties' papers refer to City National Bank ("CNB") as a party to

portion of their liens, transfer the subordinated portions to the estate, and consent to the sale of the Property free and clear of their liens. Trustee filed a motion under Rule 9019 to approve those agreements (the "Compromise Motion").

The Compromise Motion stated that Schedule D and Trustee's books and records reflected that the Property was encumbered by the following liens:

| | |
|---|---|
| Shellpoint Mortgage Servicing | $1,650,243.80 |
| First Choice Bank | $ 150,000.00 |
| Comerica | $ 449,325.00 |
| VEDC | $ 425,000.00 |
| Internal Revenue Service | $ 104,035.00 |
| Orange County Treasurer | $ 29,914.00 |
| Judgment lien | $ 173,808.00 |
| Total | $2,982,082.00 |

Under the agreements, Comerica agreed to subordinate all but $410,000 of its claim, and VEDC agreed to subordinate all but $191,000 of its claim, to the claims of Trustee, his professionals, and general unsecured creditors. To effectuate this agreement, Comerica and VEDC would transfer the subordinated portions of their liens to Trustee for the benefit of

---

the VEDC agreement. CNB is the assignee of the VEDC Liquidating Trust, which was created pursuant to a confirmed chapter 11 plan in VEDC's bankruptcy case.

the estate. Based on Trustee's calculations, absent the agreements, unsecured creditors would receive no distribution.

Debtors objected to the Compromise Motion, arguing: (1) there was no bona fide dispute between Trustee and the settling creditors; (2) the motion was a circuitous attempt to object to Debtors' homestead exemption; and (3) the law disfavors sales of fully encumbered properties.

Shortly thereafter, Trustee filed a motion to sell the Property for $2,860,000, subject to overbids, free and clear of liens and encumbrances pursuant to various subsections of § 363 (the "Sale Motion"). Trustee also requested the sale to be free and clear of Debtors' homestead exemption based on § 522(g), such that their exemption would not attach to the recovered liens resulting from the subordination agreements.[3] In his reply brief, Trustee estimated the net recovery to the estate at approximately $293,144.

Debtors filed an omnibus objection in which they strenuously objected to their homestead exemption not being paid out of the recovered liens and argued that Trustee and his professionals would be the primary beneficiaries of the sale, and no funds would go to pay general unsecured creditors. As such, they argued, the proposed terms constituted an impermissible surcharge of their homestead exemption. Debtors also requested the court compel Trustee to abandon the Property.

---

[3] Because we are dismissing this appeal for lack of standing, we need not address the substance of the requested relief.

In reply, Trustee asserted that he was not required to demonstrate a dispute under Rule 9019, and in any event the agreements could be approved as stipulations. He disputed that the presumption of impropriety for overencumbered property sales applied to the contemplated sale, but even if it did, Trustee had met the standard for overcoming that presumption. He also disputed that he and his professionals were the primary financial beneficiaries of the proposed sale. Trustee asserted that the sale would generate significant funds for unsecured creditors based on the estimated commissions, counsel fees, and Trustee's compensation, the latter two of which could be adjusted, if necessary, to ensure a meaningful distribution to unsecured creditors.

Trustee, however, did propose a revised distribution scheme under which Debtors would be paid their exemption after payment of closing costs and all consensual liens, including the subordinated portion of the Comerica and VEDC liens. According to Trustee's calculation, Debtors could expect to receive $45,962.76 on account of their homestead exemption.

After hearing argument, the bankruptcy court adopted its tentative ruling granting both motions, stating that it viewed the Trustee's efforts as "entirely proper." It rejected Debtors' arguments to the contrary. An overbidder appeared at the hearing, and, after conducting a brief auction, the bankruptcy court approved the sale at a price of $2,880,000—$20,000 over the original offer. The order approving the Sale Motion (the "Sale

Order") contains a § 363(m) finding that the buyers acted in good faith. Debtors timely appealed both orders.

After unsuccessfully seeking stays pending appeal from the bankruptcy court and this Panel, Debtors moved out of the Property. The sale closed on November 19, 2021. Shortly thereafter, Trustee paid the IRS $74,649.02, the compromised amount on its claim, as approved by the bankruptcy court. According to Trustee, he is currently holding approximately $225,852 of sale proceeds, to be distributed upon further order of the court. On February 4, 2022, a BAP motions panel denied Trustee's motion to dismiss these appeals as moot.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). We discuss our jurisdiction below.

## ISSUE

Do Debtors have standing to challenge the orders on appeal?

## STANDARD OF REVIEW

"While standing to appeal is generally a legal issue reviewed de novo, whether an appellant is a 'person aggrieved' by the order appealed is a question of fact we review in the first instance." *Landress v. Cambridge Land Co. II, LLC (In re Cambridge Land Co. II, LLC)*, 626 B.R. 319, 323 (9th Cir. BAP 2021), *appeal filed*, No. 21-60028 (9th Cir. 2021) (citing *Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011)).

6

**DISCUSSION**

**A.  Scope of Appeal**

Debtors concede that, pursuant to § 363(m), the sale of the Property cannot be reversed or modified on appeal.[4] Accordingly, this appeal is limited to the propriety of the bankruptcy court's approval of the compromises. The appeal touches on the Sale Order only to the extent the Sale Order approves the proposed distribution scheme.

**B.  Debtors lack standing in these appeals.**

"A federal court may exercise jurisdiction over a litigant only when that litigant meets constitutional and prudential standing requirements." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011) (citation omitted). Constitutional standing requires an injury in fact that is caused by or fairly traceable to some conduct, and which the requested relief will likely redress. *Id.* (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008); additional citations omitted).

"The prudential standing doctrine or the 'person aggrieved test' provides that '[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to

---

[4] Section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and

appeal that order.'" *Palmdale Hills Prop. v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011) (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1191 (9th Cir. 2018) (citation omitted).

As the appellants, it is Debtors' burden to establish standing. *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002) (citing *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997)). Trustee raised the issue in his answering brief. In their reply brief, Debtors contended that they would benefit pecuniarily by reversal of the orders on appeal because Comerica and VEDC have already released their liens in exchange for the discounted payoffs. They assume that if the orders are reversed, there will be funds available to pay their homestead exemption because all the consensual liens have been released. But they miss two critical points: first, the value of the Property that was encumbered by the Comerica and VEDC liens never belonged to Debtors and thus could not be subject to their homestead exemption; and second, if the orders are reversed, this would undo the settlement, meaning that Comerica and VEDC would be entitled to be paid the full amounts owed on their original liens. Based on the final payoff figures, Comerica would be entitled to an additional $73,518.81, and

such sale or lease were stayed pending appeal.

8

VEDC $274,578.19, for a total of $348,097, well over the amount held by Trustee.[5]

At oral argument, Debtors' counsel argued that his clients were affected pecuniarily by the orders on appeal because they must relocate. But Debtors have already conceded that the sale cannot be undone, even if we were to reverse the order approving the compromise. In other words, the compromise itself had no impact on Debtors other than to enable the sale of their overencumbered Property. If anything, the sale benefited Debtors by relieving them of nearly $3 million in secured debt. And it is yet to be determined whether or how much Debtors will receive on account of their homestead exemption, which would also benefit them.

Our resolution of this appeal on standing grounds obviates the need for the more intensive inquiry normally required in consideration of the merits—though this is the perhaps rare case in which an understanding of why Debtors lack standing required a fairly involved examination of the real world effects of the orders approved by the bankruptcy court and the consequences of their reversal.

But we pause here for a moment because, on a perhaps more fundamental level, Debtors' argument against the transactions initiated by Trustee and approved by the bankruptcy court reveals what is in essence a competing standing argument, i.e., that where a chapter 7 debtors'

---

[5] These figures are taken from the final settlement statement filed with the bankruptcy court on December 7, 2021.

homestead is apparently overencumbered, the opportunity to realize value through a creative transaction "belongs" to the debtors, and that value should invariably flow to them via their resuscitated homestead exemption.

As an initial matter, this Panel has held that, although there is a rebuttable presumption of impropriety when a chapter 7 trustee seeks to sell overencumbered property subject to a carve-out agreement, there is no per se bar on a trustee's efforts to realize value for the estate in similar circumstances, which confirms the Trustee's ability to structure and complete transactions like the ones utilized here. *See In re KVN Corp.*, 514 B.R. 1 (9th Cir. BAP 2014).

And, even more importantly, Debtors' conception of "standing" under these circumstances would fundamentally alter the role of the Trustee, who is empowered by the Code to take control of estate assets and prioritize finding value for creditors. Debtors fail to realize that, once they filed their chapter 7 case, they gave up their ability, i.e., their standing, to control their property. That control passed to Trustee, who had a fiduciary duty to maximize assets of the estate. *See Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 421 (9th Cir. BAP 2003). The trustee's "primary job is to marshal and sell the assets, so that those assets can be distributed to the estate's creditors." *In re KVN Corp.*, 514 B.R. at 5 (citation omitted). When they filed their petition and sought a discharge of their considerable unsecured debt, Debtors took the

risk that Trustee might sell the Property, and they would be paid their homestead exemption only to the extent there were proceeds left over after payment of costs of sale and consensual liens.

In short, Debtors have not met their burden to show either constitutional or prudential standing. They have not established constitutional standing by showing that the orders on appeal resulted in an injury in fact fairly traceable to the compromise, or that reversal of those orders would redress any injury. As noted, reversal would leave Debtors with no possibility of a distribution on their homestead exemption. For the same reasons, they have not established prudential standing, i.e., that they are directly and adversely affected pecuniarily by the orders on appeal. Accordingly, these appeals must be dismissed.

## CONCLUSION

These appeals are DISMISSED.

11