

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PIERRICK BRILLOUET and YONG CHU KIM-BRILLOUET,<br>         Debtors. | BAP No. CC-23-1122-CPL<br><br>Bk. No. 1:19-bk-11657-MB |
| PIERRICK BRILLOUET; YONG CHU KIM-BRILLOUET,<br>         Appellants,<br>v.<br>DAVID KEITH GOTTLIEB, Chapter 7 Trustee; COASTLINE RE HOLDINGS CORP.; PACIFIC WESTERN BANK,<br>         Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Martin R. Barash, Bankruptcy Judge, Presiding

Before: CORBIT, PEARSON[**], and LAFFERTY, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[**] Hon. Teresa H. Pearson, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

# INTRODUCTION

Chapter 7[1] debtors Pierrick Brillouet and Yong Chu Kim-Brillouet ("Brillouets") appeal an order requiring them to turnover their residential property. The bankruptcy court entered the turnover order after determining the chapter 7 trustee established the elements for turnover under § 542(a) and that the Brillouets had refused to cooperate with his efforts to market and sell the property. Because the bankruptcy court did not err in entering the turnover order, we AFFIRM.

# FACTS[2]

## A. The bankruptcy case

The Brillouets filed a voluntary chapter 11 petition in July 2019. The Brillouets' case was converted to a chapter 7 in March 2022, and a trustee was appointed ("Trustee"). The Brillouets reside at the real property located on Roscoe Boulevard in Northridge, California (the "Property") and which was listed as having a value of $642,000 in the Brillouets' bankruptcy schedules.

Pacific Western Bank and its wholly owned subsidiary Coastline RE Holdings Corp. (collectively, the "Secured Creditors") filed two proofs of

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

claim (claim nos. 11 and 12), based on recorded state court judgments attached to the Brillouets' Property.[3] The aggregate total amount of these claims as of September 26, 2022, was $975,292.45.[4] Based on these claims, the Property was fully encumbered by secured liens.

## B.     The Rule 9019 stipulation

On November 1, 2022, Trustee moved to approve a stipulation (the "Stipulation") between Trustee and the Secured Creditors pursuant to Rule 9019. Under the terms of the Stipulation, in exchange for Trustee's efforts to sell the Property, the Secured Creditors would carve-out $175,000 from their net sale proceeds, free and clear of the Secured Creditors' liens, claims, and interests (the "Estate Carve-Out") and that amount would be paid to the estate. The Stipulation further provided that if the Brillouets' claimed homestead exemption of $100,000 was eventually allowed it would be paid from the Secured Creditors' proceeds and not the Estate Carve-Out.[5] The motion proposed that the Property be listed at a sale price of $720,000.

In the motion, Trustee argued that the Stipulation under Rule 9019 was a valid exercise of his business judgment and should be approved under the factors announced in *Martin v. Kane* (*In re A & C Props.*), 784 F.2d

---

[3] The state court judgments were affirmed on appeal.

[4] The Brillouets filed an objection to claim no. 12 which was overruled by the bankruptcy court on June 30, 2023.

[5] Two exhibits were attached to the motion. One was the proposed Stipulation and the other was the proposed allocation of sale proceeds after sale of the Property.

1377, 1380-81 (9th Cir. 1986). Trustee argued that the Stipulation was fair, equitable, and in the best interest of creditors and the estate because the Stipulation provided the estate would receive $175,000 without incurring litigation costs. Without the Stipulation, the estate had no possibility of benefit or distribution from the Property.

Additionally, Trustee acknowledged the general prohibition against selling a fully encumbered asset. However, Trustee argued that he had rebutted the presumption as required by *KVN Corp. v. Green* (*In re KVN Corp.*), 514 B.R. 1, 5-8 (9th Cir. BAP 2014) (providing 3-part test to rebut presumption against trustee selling a fully encumbered asset). Trustee argued that he satisfied all three requirements by: (1) fulfilling the trustee's basic duties; (2) demonstrating "a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors"; and (3) fully disclosing the terms of the carve-out agreement to the bankruptcy court. *See KVN Corp.*, 514 B.R. at 8.

The Brillouets filed a one paragraph opposition[6] that lacked any legal analysis and did not present any admissible evidence. At the hearing on the motion, the Brillouets failed to provide any cogent basis for opposing Trustee's motion. Consequently, at the close of the hearing the bankruptcy court granted Trustee's motion to approve the Stipulation. In its oral findings of fact and conclusions of law, the bankruptcy court properly

---

[6] The Brillouets also attached an unfiled complaint with a different case number to their opposition.

evaluated the *A & C Properties* factors before determining the Stipulation was fair, reasonable, and in the best interest of creditors. The bankruptcy court also properly evaluated the factors identified in *KVN Corp.* before determining that Trustee had rebutted the presumption of impropriety that might arise from selling a fully encumbered asset. This was because the Stipulation created the $175,000 Estate Carve-Out, providing the prospect for a meaningful distribution to unsecured creditors.

On January 17, 2023, the bankruptcy court entered a written order consistent with its oral ruling ("Stipulation Order"). The Brillouets did not appeal the Stipulation Order.

## C.    Trustee's motion for turnover of the Property

On May 2, 2023, Trustee moved for an order requiring the Brillouets to turn over the Property ("Turnover Motion"). In the Turnover Motion, Trustee explained that he and his real estate broker ("Trustee's Broker") had been trying to market and sell the Property since January but neither the Brillouets nor their attorney was cooperating. Trustee stated that Brillouets' counsel had not responded to any of Trustee's many emails attempting to make an appointment for Trustee's Broker to view and evaluate the Property for listing. Trustee explained he was not able to coordinate directly with the Brillouets because they failed to appear at eight scheduled meetings of creditors. When they finally appeared on February 17, 2023, they told Trustee they would contact him within the

5

week to coordinate a time to allow access to the Property. However, "no response was ever received from Debtors."

Trustee also described the efforts of Trustee's Broker, stating that she went to the Property on February 23, 2023, to try to "make contact with Debtors to arrange an inspection time that was convenient for Debtors." However, when she arrived at the Property, she realized access was impossible because it "was gated with high walls blocking any view" into the Property.

Trustee argued that the Brillouets' refusal to cooperate was a violation of their statutory duty to surrender property of the estate to Trustee pursuant to § 521(a)(4). Trustee also alleged that the Brillouets were interfering with his ability to fulfill his statutory duties under § 701, which requires trustees to collect and reduce to money all property of the estate for the benefit of creditors. Trustee clarified that his original intent was to allow the Brillouets to continue living at the Property until it was sold. He asserted that the Brillouets were intentionally thwarting Trustee's efforts to market and sell the Property by failing to grant Trustee's Broker access to the Property. Thus, Trustee was forced to seek an order of the court requiring the Brillouets to turn over the Property so that it could be marketed and sold for the benefit of the estate's creditors.

Trustee identified § 542(a) as the relevant statute applicable to turnover. Trustee maintained that he had satisfied all three elements required of § 542(a): (1) that property of the estate is or was in the

possession, custody, or control of an entity during the pendency of the case; (2) that the property was of the type that could be used, sold, or leased under § 363; and (3) that the property has more than inconsequential value or benefit to the estate.

First, Trustee argued that the Brillouets' statements established that the Property was property of the estate under § 541(a) and under the Brillouets' control. Second, Trustee argued that the Property was a residence and thus could be sold under § 363. Third, Trustee argued that the Property had more than inconsequential value or benefit to the estate because, based on the Stipulation Order, the Estate would receive $175,000 once the Property was sold.

One day before the scheduled hearing on the Turnover Motion, the Brillouets, through counsel, filed a one-page opposition. Essentially, the Brillouets argued that they had been confused about their obligations and the bankruptcy process, but they were now ready to cooperate with Trustee. Therefore, the Brillouets argued, a turnover order was unnecessary. The Brillouets also argued that moving from the Property would be an extreme hardship.

At the hearing on the Turnover Motion, the Brillouets conceded they had no legal or factual basis to oppose the Turnover Motion. Rather, the Brillouets opposed the Turnover Motion on equitable grounds and sought additional time to vacate the Property. They ran a home for recovering

alcoholics on the Property and argued it would be a hardship to vacate by the date requested by Trustee.

Trustee responded that he was "not unsympathetic" but reiterated that the Turnover Motion was a "last resort" based on the Brillouets' failure to cooperate for the previous six months. Trustee argued the Brillouets had already been given ample time and a turnover order should be effective within seven days.

After hearing from both parties, the bankruptcy court determined that the Brillouets had not provided any admissible evidence refuting Trustee's facts and recitation of events. The bankruptcy court also determined that the Brillouets failed to present any legal basis or support for their opposition. In an oral ruling, the bankruptcy court provided findings of facts and conclusions of law granting the Turnover Motion with minor modifications.

On June 6, 2023, the bankruptcy court entered an order consistent with its oral ruling ("Turnover Order"). The Brillouets timely appealed the Turnover Order. The Brillouets filed a motion to stay the Turnover Order pending appeal which was denied by the bankruptcy court. The Brillouets did not seek a stay pending appeal from this court.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in entering the Turnover Order.

**STANDARDS OF REVIEW**

Determining whether property is included in a bankruptcy estate, and issues concerning the proper procedures for recovering estate property, are questions of law that we review de novo. *White v. Brown* (*In re White*), 389 B.R. 693, 698 (9th Cir. BAP 2008). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace* (*In re Francis*), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted). The court's factual findings are reviewed for clear error. *Retz v. Samson* (*In re Retz*), 606 F.3d 1189, 1196 (9th Cir. 2010). A factual finding is clearly erroneous if it is "illogical, implausible, or without support in the record." *Id.*

**DISCUSSION**

A.   **The bankruptcy court did not err in ordering turnover of the Property**.

Under the Bankruptcy Code, the filing of a bankruptcy petition has certain immediate consequences. For example, the filing creates an estate that generally comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). The filing also creates statutory duties and obligations. Among these, "a chapter 7 trustee has the duty to 'collect and reduce to money the property of the estate for which such trustee serves . . . .'" *KVN Corp.*, 514 B.R. at 5 (quoting

9

§ 704(a)(1)). To perform this duty, the trustee "marshal[s] and sell[s] the assets, so that those assets can be distributed to the estate's creditors." *Id.* (citation omitted). The debtor also has statutory duties. The debtor has a statutory duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title" by "surrender[ing] to the trustee all property of the estate." § 521(a)(3), (a)(4).

If the debtor fails to cooperate or surrender property of the estate, the trustee may seek turnover of estate property. *Shapiro v. Henson*, 739 F.3d 1198, 1200 (9th Cir. 2014) ("§ 542(a) allows a turnover motion to be brought against the entity at any time during the pendency of the bankruptcy case, even if the entity no longer possesses or has custody or control over the property, at the time the motion is filed"); *In re Bolden*, 327 B.R. 657, 668 (Bankr. C.D. Cal. 2005) (determining that debtor was uncooperative and "trustee needs a turnover order to market and sell the property"). Turnover is governed by § 542(a) which provides in relevant part:

> [A]n entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 . . . shall deliver to the trustee . . . such property, or the value of such property, unless such property is of inconsequential value or benefit to the estate.

§ 542(a).

Accordingly, to "prevail in a turnover action under § 542(a), a trustee must establish: (1) that property of the estate is or was in the possession, custody, or control of an entity during the pendency of the case; (2) that the

10

property may be used by the trustee under § 363; and (3) that the property has more than inconsequential value or benefit to the estate." *Chantel v. Pierce* (*In re Chantel*), BAP Nos. AZ-14-1511–PaJuKi, AZ-14-1514-PaJuKi, 2015 WL 3988985, at *8 (9th Cir. BAP July 1, 2015), *aff'd*, 693 F. App'x 723 (9th Cir. 2017), *and aff'd*, 694 F. App'x 508 (9th Cir. 2017) (citations omitted). In a turnover action, a trustee does not need to establish a minimum benefit or distribution to unsecured creditors. Thus, the standard for approving turnover (requiring a finding that the property is not of inconsequential value to the **estate**) is arguably less rigorous than the standard for approving a stipulation and carve-out involving fully encumbered property (requiring a finding that because of the carve-out, the property may provide a meaningful distribution to **unsecured creditors**).

The bankruptcy court in this case entered the Stipulation Order months before the Turnover Order. Before approving the Stipulation, the bankruptcy court determined that the sale of the Property and resulting Estate Carve-Out created a prospect of meaningful benefit for the unsecured creditors. Thus, the issue of the Property's value to the estate was settled pursuant to the law of the case doctrine. *See FDIC v. Kipperman* (*In re Com. Money Ctr., Inc.*), 392 B.R. 814, 832 (9th Cir. BAP 2008) (explaining under law of the case doctrine, a court is barred from reconsidering an issue previously decided in the same court or a higher

11

court in the same case).[7] Law of the case doctrine applies to an issue that was decided either expressly or by necessary implication. *Id.*

On appeal, the Brillouets do not argue that the bankruptcy court applied the wrong law, nor do they dispute the first two elements required for establishing turnover. Rather, the Brillouets sole opposition relates to their valuation of the Property. The Brillouets argue that the bankruptcy court erred in granting the Turnover Motion because the Property is of inconsequential value or benefit to the estate. However, beyond conclusory statements, the Brillouets have failed to direct the Panel to specific legal errors or erroneous factual findings by the bankruptcy court as to the Turnover Order. Furthermore, the Brillouets' allegations are belied by the record and the law of the case.

In the findings of fact and conclusions of law supporting the Turnover Order, the bankruptcy court specifically addressed the value of the Property and its benefit to the estate. The bankruptcy court found that pursuant to the previously approved Stipulation Order, which created the

---

[7] The Brillouets argue that the law of the case doctrine applies only to "issues decided by an *appellate* court, not the trial court." Op. Br. 19. In support, the Brillouets cite *Peralta v. Dillard*, 744 F.3d 1076, 1088-89 (9th Cir. 2014). This is a clear and intentional misstatement of the law and the holding of the *Peralta* case. Peralta does not support this argument. In *Peralta*, plaintiff argued that the district court was precluded from granting the defendants judgment as a matter of law because it previously denied them summary judgment. *Peralta*, 744 F.3d at 1088. The Ninth Circuit disagreed, explaining that "denial of a summary judgment motion is never law of the case because" the denial "may result from a factual dispute" and that "dispute may disappear as the record develops." *Id. Peralta* did not prohibit applying the law of the case doctrine to other matters previously decided by the same court.

Estate Carve-Out, the estate would receive $175,000 from the sale proceeds of the Property. The bankruptcy court found the amount of $175,000 would provide more than an inconsequential value or benefit to the estate. This finding was not erroneous, was consistent with the bankruptcy court's previous determinations, and the Brillouets fail to demonstrate otherwise.

Even if the $175,000 Estate Carve-Out would not provide a large dividend to unsecured creditors, "[a] small-dollar benefit to unsecured creditors is **obviously better than the zero-dollar benefit actually sought**" by the Brillouets. *In Re Baroni*, BAP No. CV 23-1818-MWF, 2023 WL 4879843, at *12 (C.D. Cal. June 28, 2023) (emphasis added).[8]

---

[8] Various courts have found that amounts smaller than $175,000.00 are of consequential value or benefit to the estate. *See, e.g., Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, BAP No. CC-17-1334-SKuL, 2018 WL 4190874, at *6 (9th Cir. BAP Aug. 31, 2018) (determining a $10,000 sale "was not inconsequential"), *aff'd*, 833 F. App'x 116, 120 (9th Cir. 2020) (affirming and explaining "even an extra $500 . . . would be better than potentially 100% of nothing"); *In re Selander*, No. 16-43505, 2017 WL 1157101, at *7 (Bankr. W.D. Wash. Mar. 24, 2017) (determining that the settlement carve-out of "$37,000, [although] constitut[ing] just a small fraction of the total unsecured claims . . . it at least allows for some distribution . . . and in that respect is meaningful to the likely recipients"); *Rynda v. Thompson (In re Rynda)*, BAP No. NC-11-1312-HDoD, 2012 WL 603657, at *2 (9th Cir. BAP Jan. 30, 2012) (affirming bankruptcy court's determination that debtor's tax refund of approximately $10,000 was of significant value to the estate).

**B.** **The Brillouets cannot use this appeal to attack collaterally the Stipulation Order.**

The Brillouets' notice of appeal pertains only to the Turnover Order. However, most of their briefing focuses on the alleged errors the bankruptcy court made in previously approving the Stipulation. Indeed, the Brillouets' briefing misstates the law for establishing a right to turnover and conflates turnover with the issues and standards for compromises under Rule 9019 involving carve-outs and the sale of fully encumbered property.

Importantly, the Brillouets had the opportunity to appeal the Stipulation Order which created the Estate Carve-Out. *See Dye v. Sachs* (*In re Flashcom, Inc.*), BAP No. CC-13-1311-KuDaKi, 2014 WL 4923073, at *8 (9th Cir. BAP Oct. 1, 2014) ("orders approving compromises are now treated as final orders for appeal purposes"). The Brillouets chose not to appeal the Stipulation Order. The Brillouets "cannot successfully challenge an order on appeal by attacking a prior final order that they did not timely appeal." *Jue v. Liu* (*In re Liu*), 611 B.R. 864, 881 (9th Cir. BAP 2020); *see also Heritage Pac. Fin., LLC v. Machuca* (*In re Machuca*), 483 B.R. 726, 735-36 (9th Cir. BAP 2012) ("[T]he bankruptcy court's order granting summary judgment was final." Appellant "cannot collaterally attack that judgment" through a different proceeding.). Regardless, even if the Brillouets included

14

the Stipulation Order in their notice of appeal, such appeal would be untimely.[9] This Panel lacks jurisdiction to consider untimely appeals.[10]

## CONCLUSION

The record demonstrates the bankruptcy court did not err in entering the Turnover Order. The bankruptcy court applied the correct law and made the necessary findings. The bankruptcy court determined that Trustee established the elements of § 542(a) and that the Brillouets failed to comply with their duties under § 521(a) by refusing to cooperate with Trustee in his efforts to market and sell the Property for the benefit of the estate. When a debtor does not comply, the bankruptcy court has the power to achieve compliance by ordering turnover of the property. *See In re Bolden*, 327 B.R. at 668 Therefore, the bankruptcy court properly ordered turnover of the Property under § 542(a). We AFFIRM.

---

[9] Under Rule 8002(a)(1), "[e]xcept as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Subsection (d)(1) allows the bankruptcy court to "extend the time to file a notice of appeal upon a party's motion that is filed: (A) within the time prescribed by this rule; or (B) within 21 days after that time, if the party shows excusable neglect." Rule 8002(d)(1). The Stipulation Order was entered on January 17, 2023. The present appeal was not filed until July 6, 2023.

[10] "[T]he 14-day time deadline in Rule 8002(a) is a jurisdictional requirement that acts as an immutable constraint on our authority to consider and hear appeals." *Wilkins v. Menchaca (In re Wilkins)*, 587 B.R. 97, 107 (9th Cir. BAP 2018) (citation omitted).

15